IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Jointly Administered** |
| PILLOWTEX CORPORATION, *et al.*, | ) | **Case No. 03-12339 (PJW)** |
| | ) | |
| Debtors. | ) | **Chapter 11** |
| | ) | |
| PILLOWTEX CORPORATION, | ) | |
| FIELDCREST CANNON, INC., and | ) | |
| THE LESHNER CORPORATION, | ) | **Adv. Proc. No. 06-50806 (PJW)** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERATED DEPARTMENT STORES, | ) | |
| INC.; FEDERATED CORPORATE | ) | |
| SERVICES, INC.; BLOOMINGDALE'S, | ) | |
| INC.; BLOOMINGDALE'S BY MAIL, | ) | |
| LTD.; and MACY'S DEPARTMENT | ) | |
| STORES, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR
DETERMINATION THAT CLAIMS ARE NON-CORE AND
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR
<u>WITHDRAWAL OF REFERENCE TO THE BANKRUPTCY COURT</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
William H. Sudell, Jr. (No. 463)
Gilbert R. Saydah, Jr. (No. 4304)
1201 North Market Street, P.O. Box 1347
Wilmington, Delaware 19899
Tel. (302) 658-9200

DEBEVOISE & PLIMPTON LLP
Michael E. Wiles
Suzanne M. Grosso
Julie M. Calderon
919 Third Avenue
New York, New York 10022
Tel. (212) 909-6000

Attorneys for Plaintiffs-Debtors

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..............................................................................................................1

FACTUAL BACKGROUND & PROCEDURAL HISTORY...........................................1

ARGUMENT.....................................................................................................................3

    I.    Defendants' Demand For A Jury Trial Does Not By Itself Provide Cause
        To Withdraw The Reference Until This Case Is Ready for Trial ............................4

    II.   The Majority Of The Remaining Factors Favor Denial Of Defendants'
        Motion To Withdraw The Reference Until This Case Is Ready For Trial .............7

CONCLUSION.................................................................................................................10

i

22305769v4

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Auto Manuf. Specialties Co. v. Sachs (In re Auto Specialties Manuf. Co.)*, 134 B.R. 227 (W.D. Mich. 1990)..................................................................................5, 7

*Business Communications, Inc. v. Freeman*, 129 B.R. 165 (N.D. Ill. 1991)...................5, 7

*Colbert v. Anderson*, 117 B.R. 51 (Bankr. D. Conn. 1990) ......................................5

*EXDS, Inc. v. CB Richards Ellis, Inc. (In re EXDS, Inc.)*, 2006 U.S. Dist. LEXIS 50192 (D. Del. Jul. 20, 2006) ...............................................................3, 4, 5

*GE Capital Corp. v. Teo*, 2001 U.S. Dist. LEXIS 22266 (D.N.J. Dec. 14, 2001)..............5

*Gucci v. Gucci*, 1997 U.S. Dist. LEXIS 3001 (S.D.N.Y. Mar. 17, 1997) ......................5, 7

*Hatzel & Buehler, Inc. v. Central Hudson Gas & Elec.*, 106 B.R. 367 (D. Del. 1989)................................................................................................4, 9

*Hayes v. Royala, Inc.*, 180 B.R. 476 (E.D. Tex. 1995)..........................................5

*In re GI Holdings, Inc.*, 295 B.R. 211 (D.N.J. 2003)............................................7

*Keene Corp. v. Levy, Phillips, & Konigsberg (In re Keene Corp.)*, 182 B.R. 379 (S.D.N.Y. 1995) ...............................................................................5

*NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.)*, 203 B.R. 905 (D. Del. 1996).............6

*Northwestern Institute of Psychiatry, Inc. v. The Travelers Indemnity Co.*, 272 B.R. 104 (E.D. Pa. 2001)..................................................................................6

*Wakefern Food Corp. v. C&S Wholesale Grocers, Inc. (In re Big V Holding Corp.)*, 2002 U.S. Dist. LEXIS 12609 (D. Del. July 11, 2002) ......................................4

*Wedtech Corp. v. Banco Popular De Puerto Rico (In re Wedtech Corp.)*, 94 B.R. 293 (S.D.N.Y. 1988) ...............................................................................5

## DOCKETED CASES

*Fieldcrest Cannon, Inc. v. Garnet Hill, Inc.*, Adv. Proc. No. 05-30743..............................8

*Fieldcrest Cannon, Inc. v. Harbor Linen, Inc.*, Adv. Proc. No. 05-30742 ..........................8

*Fieldcrest Cannon, Inc. v. Linens 'N Things, Inc.*, Adv. Proc. No. 04-53232....................8

*Pillowtex Corp., et al. v. Bed Bath & Beyond, Inc.*, Adv. Proc. No. 06-50806 ..................8

*Pillowtex Corp., et al. v. Boscov's*, Adv. Proc. No. 06-50805 ............................................8

*Pillowtex Corp., et al. v. Kohl's Department Stores, Inc.*, Adv. Proc. No. 04-53231 ............................................................................................................................8

*Pillowtex Corp., et al. v. Mervyn's LLC*, Adv. Proc. No. 03-57581 ...................................8

*Pillowtex Corp., et al. v. The May Department Stores Company*, Adv. Proc. No. 03-12339 ............................................................................................................................8

## FEDERAL STATUTES

28 U.S.C. § 157(d) ...............................................................................................................3, 4

## MISCELLENEOUS

COLLIER ON BANKRUPTCY ......................................................................................................6

22305769v4

## INTRODUCTION

Plaintiffs submit this response and opposition to Defendants' motions for a determination that the claims asserted in this action are non-core and for a withdrawal of the reference to the Bankruptcy Court. Plaintiffs do not oppose the former motion. In contrast, Plaintiffs strongly oppose the latter motion and believe that, under well-established principles regarding the exercise of the District Court's discretionary withdrawal power, Defendants' motion should be denied without prejudice to renew if and when the case becomes ready for trial. The Bankruptcy Court has over three years of experience handling both Debtors' bankruptcy proceeding generally and nine virtually identical adversary proceedings. As a result, keeping this case before Judge Walsh for purposes of all pretrial proceedings will promote uniformity in bankruptcy administration, reduce forum shopping and confusion, foster economical use of debtors' and creditors' resources, expedite the bankruptcy process, and further judicial economy.

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

On July 30, 2003 (the "Petition Date"), Pillowtex Corporation and its affiliated debtors (collectively, the "Debtors") filed petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). Debtors continue to manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

Prior to the Petition Date, Debtors had contractual relationships with many retail customers that purchased home textile goods (*e.g.*, towels, sheets, bath rugs, comforters) manufactured by Plaintiffs. Following the Petition Date, Plaintiffs commenced a series

of adversary proceedings in the Bankruptcy Court seeking to recover amounts due and owing for goods ordered by and delivered to at least nine of Plaintiffs' former retail customers.

On July 28, 2006, Pillowtex Corporation, Fieldcrest Cannon, Inc. and The Leshner Corporation (collectively "Plaintiffs") commenced this adversary proceeding against Federated Department Stores, Inc., Federated Corporate Services, Inc., Bloomingdale's, Inc., Bloomingdale's by Mail, Ltd., and Macy's Department Stores, Inc. (collectively "Defendants"). Plaintiffs seek to recover in excess of $3 million on account of Defendants' failure to make full and timely payment for goods purchased from and delivered by Plaintiffs to Defendants. Of this amount, nearly $350,000 consists of invoices for which Defendants have not made any payment to Plaintiffs, and approximately $2.7 million consists of unsubstantiated and unwarranted deductions taken from invoices for which Defendants have made partial payment to Plaintiffs. This action is the ninth in a series of virtually identical collection cases brought by Debtors against former retail customers.

On August 29, 2006, Defendants filed an Answer denying the allegations of the Complaint, demanding a trial by jury, and asserting affirmative defenses of, among others, setoff and recoupment.

On September 26, 2006, the parties appeared before Judge Walsh for an initial pre-trial conference. Defendants did not disclose during that conference their intention to challenge the Bankruptcy Court's jurisdiction. Rather, Defendants agreed to negotiate a pre-trial schedule with Plaintiffs to be submitted for the Bankruptcy Court's approval.

2

On September 27, 2006, Judge Walsh entered a Stipulated Request and Order Setting Pre-trial Schedule that was jointly submitted by the parties. The Order provides that: *(a)* the Bankruptcy Court will hold a status conference on December 18, 2006 to determine whether to refer the case to mediation; *(b)* all discovery must be completed by April 13, 2007; *(c)* summary judgment opening briefs must be filed by May 11, 2007; and *(d)* the Bankruptcy Court will conduct a final pre-trial conference 30 days after any summary judgment motions have been fully briefed.

On October 11, 2006, Defendants moved to withdraw the reference of this adversary proceeding. That same day, Defendants also filed a Motion for Determination That Claims Against Defendants Are Non-Core. Without adopting any of Defendants' recitals of the facts and supporting arguments, Plaintiffs do not oppose Defendants' motion for a determination from the Bankruptcy Court that the claims asserted in the Complaint are non-core.

On October 17, 2006, Plaintiffs served Defendants with Initial Disclosures pursuant to Fed. R. Civ. Procedure 26(a)(1). Defendants served their Initial Disclosures on October 18, 2006. On October 19, 2006, Defendants served Plaintiffs with a First Request for Production of Documents and a First Set of Interrogatories.

## ARGUMENT

A district court can exercise the discretionary power afforded to it under 28 U.S.C. § 157(d) to withdraw an automatic reference to the Bankruptcy Court only for "cause shown," and the party seeking withdrawal bears the burden of showing "cause." *See EXDS, Inc. v. CB Richards Ellis, Inc. (In re EXDS, Inc.)*, 2006 U.S. Dist. LEXIS 50192 at *2-*3 (D. Del. Jul. 20, 2006) (Exhibit A hereto). Although there is no guidance

3

in the text of § 157(d) as to what constitutes "cause," it has been held that such language "creates a 'presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court, unless rebutted by a contravening policy.'" *Hatzel & Buehler, Inc. v. Central Hudson Gas & Elec.*, 106 B.R. 367, 371 (D. Del. 1989).

In the District of Delaware, "a showing of 'cause' is the product of balancing several factors," including: *(a)* whether a jury trial has been requested; *(b)* whether the proceedings involve core or non-core issues; *(c)* promoting uniformity in bankruptcy administration; *(d)* reducing forum shopping and confusion; *(e)* fostering economical use of debtors' and creditors' resources; *(f)* expediting the bankruptcy process; and *(g)* judicial economy. *In re EXDS*, 2006 U.S. Dist. LEXIS 50192 at *3-*4 (citing *In re Pruit*, 910 F.2d 1160, 1168 (3d Cir. 1990)); *see Hatzel*, 106 B.R. at 371.

For the reasons described in this opposition brief, Defendants have not satisfied their burden at this time. The District Court therefore should deny Defendants' motion for withdrawal of the reference without prejudice to renew at a later date.

I.    **Defendants' Demand For A Jury Trial Does Not By Itself Provide Cause To Withdraw The Reference Until This Case Is Ready for Trial**

The mere fact a moving party has demanded a jury trial *only* provides a sufficient showing of cause to withdraw a reference to the Bankruptcy Court "if and when the case is ready to proceed to trial." *In re EXDS*, 2006 U.S. Dist. LEXIS 50192 at *5; *see, e.g., Wakefern Food Corp. v. C&S Wholesale Grocers, Inc. (In re Big V Holding Corp.)*, 2002 U.S. Dist. LEXIS 12609 at *11, *17 (D. Del. July 11, 2002) (Exhibit B hereto) (denying motion to withdraw reference because it "would be premature to withdraw the reference to the bankruptcy court based upon the unfixed proposition that a jury trial may occur in the future;" "[w]ithdrawal of the reference based on the ground that a party is entitled to a

4

jury trial should be deferred until the case is 'trial ready'").[1]

When a case in which a jury trial has been demanded is not yet ready for trial, the District Court must balance each of the remaining factors listed above in determining whether to exercise its discretion to withdraw the reference. *See In re EXDS*, 2006 U.S. Dist. LEXIS 50192 at *5 (denying *unopposed* motion to withdraw reference of *non-core* breach of contract claim after concluding that balance of remaining factors did not favor withdrawal during pre-trial phase).[2] Plaintiffs explain in Section II below why analysis

---

[1]    *Accord GE Capital Corp. v. Teo*, 2001 U.S. Dist. LEXIS 22266 at *14 (D.N.J. Dec. 14, 2001) (Exhibit C hereto) ("mere fact that a [d]efendant has asserted a right to trial by jury is not sufficient to immediately justify withdrawal of an action from bankruptcy"); *Gucci v. Gucci*, 1997 U.S. Dist. LEXIS 3001, at *2, *3 (S.D.N.Y. Mar. 17, 1997) (Exhibit D hereto) (denying without prejudice motion for withdrawal of reference at "present infant stage of the proceeding" until "case becomes trial ready"); *Keene Corp. v. Levy, Phillips, & Konigsberg (In re Keene Corp.)*, 182 B.R. 379, 385 (S.D.N.Y. 1995) (denying motion for withdrawal of reference because issue was "not ripe" in "initial stages" of adversary proceeding); *Hayes v. Royala, Inc.*, 180 B.R. 476, 477 (E.D. Tex. 1995) ("court will not grant a motion to withdraw until it is readily apparent that Plaintiffs' case will require a trial by jury"); *Auto Manuf. Specialties Co. v. Sachs (In re Auto Specialties Manuf. Co.)*, 134 B.R. 227, 229 (W.D. Mich. 1990) (motion seeking withdrawal of reference based upon jury demand was "premature" and "'will become a question ripe for determination if and when the case becomes trial ready'" (internal citation omitted)).

[2]    *See also In re Keene*, 182 B.R. at 385 ("bankruptcy judge is fully equipped with the tools to proceed in this matter" until case is trial ready); *Business Communications, Inc. v. Freeman*, 129 B.R. 165, 166 (N.D. Ill. 1991) ("bankruptcy court can properly resolve pretrial interlocutory questions" and "make recommendations based on its proposed findings of fact and conclusions of law" until case is trial ready); *Colbert v. Anderson*, 117 B.R. 51, 54 (Bankr. D. Conn. 1990) ("Retention of jurisdiction by [bankruptcy] court over pre-trial matters will reduce to a minimum the burden placed upon the district court and the potential for the use of withdrawal as a litigation tactic"); *Wedtech Corp. v. Banco Popular De Puerto Rico (In re Wedtech Corp.)*, 94 B.R. 293, 295 (S.D.N.Y. 1988) ("defendants' right to a jury trial would not be disturbed by allowing [bankruptcy judge] to continue to oversee the pre-trial supervision of this case….[Bankruptcy judge's] expressed familiarity with the present action, as well as the factual overlap with the numerous cases before him, present a unique and compelling opportunity to promote judicial economy and swift resolution").

5

of each of the majority of the remaining factors leans heavily toward keeping this case in the Bankruptcy Court until it is ready for trial.

None of the three authorities cited by Defendants stands for the proposition that a bankruptcy court's inability to hold a jury trial, standing alone, requires withdrawal of a reference before the case is ready for trial. The two cases cited by Defendants (Def. Br. at 5) did not find that a demand for a jury trial was sufficient to establish cause for withdrawal. Those cases instead considered each of the remaining factors in determining whether the moving party had satisfied its burden. *See Northwestern Institute of Psychiatry, Inc. v. The Travelers Indemnity Co.*, 272 B.R. 104, 111 (E.D. Pa. 2001) (holding that court is required to consider other factors after determining that movant is entitled to jury trial); *NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.)*, 203 B.R. 905, 913 (D. Del. 1996) (expressly finding "this Court would reach the same conclusion in this case [based on its analysis of other factors], even absent the right to a jury trial"). And Defendants' reference to COLLIER ON BANKRUPTCY is disingenuous because of its selective omission of the footnote being quoted (Def. Br. at 5). The entirety of that footnote reads:

> It has been held that the inability of a bankruptcy court to hold a jury trial without the parties' consent is grounds for withdrawing the reference. *However, the reference frequently will not be withdrawn until the case is ready for trial, leaving pretrial matters to the bankruptcy judge.*

1 COLLIER ON BANKRUPTCY, ¶3.04[1][c] at 3-57, n.3 (15th Rev. Ed. 2001) (emphasis added).

## II.    The Majority Of The Remaining Factors Favor Denial Of Defendants' Motion To Withdraw The Reference Until This Case Is Ready For Trial

Considerations of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering economical use of debtors' and creditors' resources, expediting the bankruptcy process, and furthering judicial economy weigh decidedly in favor of allowing this case to proceed in the Bankruptcy Court until it is ready for trial (assuming the parties are not able to resolve their disputes through mediation or other settlement negotiations).

Having presided over these bankruptcy proceedings for three years, the Bankruptcy Court is familiar with Debtors' business organization and financial affairs. Debtors have also commenced in the Bankruptcy Court nine virtually identical adversary proceedings against former retail customers seeking to collect amounts due on unpaid invoices and amounts improperly deducted by those customers from invoices on which partial payment was made to Debtors. This familiarity with both Debtors' general operations and issues specific to the collection cases will necessarily facilitate a more efficient and effective administration of the pre-trial phase.[3]

---

[3]    *See, e.g., In re GI Holdings, Inc.*, 295 B.R. 211, 220 (D.N.J. 2003) (denying motion to withdraw reference because judicial economy is better served by having "Bankruptcy Court, with over 24 months experience" in bankruptcy case); *Gucci*, 1997 U.S. Dist. LEXIS 3001 at *2 ("[T]he interests of judicial economy will be well served by having this case before the Bankruptcy Court that already has extensive knowledge of the complex underlying transactions and occurrences"); *Business Communications*, 129 B.R. at 166 (Bankruptcy Court is in "best position to monitor the progress of the litigation as [the Bankruptcy Judge] is overseeing the bankruptcy;" from that "vantage point, the bankruptcy judge can ensure the uniform, efficient administration of the bankruptcy estate"); *Auto Manuf. Specialties Co. v. Sachs (In re Auto Specialties Manuf. Co.)*, 134 B.R. 227, 229 (W.D. Mich. 1990) (denying motion to withdraw the reference without prejudice and finding that it would be "advantageous to all parties to permit [the bankruptcy judge], who is familiar with the dynamics and history of the case, to continue sheparding it toward resolution" until case became ready for trial).

Judge Walsh recognized that the thousands of individual transactions comprising the disputed invoice and deduction amounts are fact-intensive, prohibitively expensive and time-consuming to resolve by trial, and are obviously an appropriate subject for compromise. Accordingly, his approach to the collection cases has been to refer each of them to mediation following the completion of all (or in some cases, at the parties' agreement, limited) discovery. That approach has met with success: two cases (*Pillowtex Corp., et al. v. Kohl's Department Stores, Inc.*, Adv. Proc. No. 04-53231; *Fieldcrest Cannon, Inc. v. Garnet Hill, Inc.*, Adv. Proc. No. 05-30743) settled just prior to mediation, and two cases (*Pillowtex Corp., et al. v. The May Department Stores Company*, Adv. Proc. No. 03-12339; and *Fieldcrest Cannon, Inc. v. Linens 'N Things, Inc.*, Adv. Proc. No. 04-53232) settled shortly after mediation. Each of these mediations was scheduled to occur or in fact occurred following the one collection case to go to trial before Judge Walsh (*Pillowtex Corp., et al. v. Mervyn's LLC*, Adv. Proc. No. 03-57581).[4]

Contrary to Defendants' assertions (Def. Br. at 6), the legal issues and types of evidence to be offered in this action duplicate the legal issues and types of proof in all of the collection cases brought by Debtors against former retail customers. The supporting evidence to be offered by Plaintiffs and Defendants in this action is no different than that over which the Bankruptcy Court managed during pre-trial phase of the other collection

---

[4]    The case against Defendants and two other cases (*Fieldcrest Cannon, Inc. v. Harbor Linen, Inc.*, Adv. Proc. No. 05-30742; and *Pillowtex, et al. v. Bed Bath & Beyond, Inc.*, Adv. Proc. No. 06-50806) are pending before Judge Walsh. The reference to the last of these collection cases, *Pillowtex v. Boscov's*, Adv. Proc. No. 06-50805, was withdrawn on October 12, 2006 by Judge Sleet and transferred to the District Court for further proceedings. Plaintiffs respectfully disagree with Judge Sleet's ruling, which apparently based withdrawal solely on the fact that the defendant in that case seeks a jury trial on non-core claims without consideration of any of the other applicable factors.

8

actions. For example, this case (like the others) will involve review of various compliance-related and sales-incentive programs offered by Plaintiffs to *all* of its former retail customers. These programs authorized the customers in certain circumstances to take deductions from invoices; the disputed deductions in each case arise pursuant to the same series of programs. The related proof will include, among other things, Plaintiffs' receivables and accounting records, debit memos, chargeback claims, shipping and delivery records, and an industry-wide electronic transmission system – all types of proof that do not differ in any meaningful way from the discovery over which Judge Walsh presided in the other collection cases.

In addition, all of the defendants in these adversary proceedings sought or seek to set-off, recoup and/or counterclaim for "lost profit damages" and "markdown damages" allegedly incurred as a result of Debtors' bankruptcy filing. Having already conducted a bench trial on this issue in the action against Mervyn's Corp., the Bankruptcy Court is by now well versed in the applicable legal analysis, and it is a near certainty that the underlying facts giving rise to these alleged "damages" are indistinguishable – but for the dollar amounts claimed – in each of the nine collection cases.

The only factor arguably favoring withdrawal here is that Plaintiffs have not opposed Defendants' motion for a determination from the Bankruptcy Court that is a non-core proceeding. But "[w]hether a proceeding is labeled 'core' or 'non-core' does not necessarily determine whether cause exists for withdrawal." *Hatzel & Buehler*, 106 B.R. at 370. Even more importantly, this factor is outweighed by each of the remaining factors the District Court must balance when deciding whether to withdraw the referral of a case that is not yet ready for trial.

9

22305769v4

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the District Court enter an order *(i)* denying Defendants' motion to withdraw the reference without prejudice to renewal once the case is ready for trial, and *(ii)* granting such other and further relief as the District Court deems just and proper.

Dated:   October 25, 2006
           Wilmington, Delaware

Respectfully submitted,

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

William H. Sudell, Jr. (No. 463)
Gilbert R. Saydah, Jr. (No. 4304)
1201 North Market Street
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

and

DEBEVOISE & PLIMPTON LLP
Michael E. Wiles
Suzanne M. Grosso
Julie M. Calderon
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6000
Facsimile: (212) 909-6836

*Attorneys for Plaintiff-Debtors*

10

22305769v4

**EXHIBIT A**

LEXSEE 2006 U.S. DIST. LEXIS 50192

**EXDS, INC. (f/k/a EXODUS COMMUNICATIONS, INC.), et al., Debtor, EXDS, INC. (f/k/a EXODUS COMMUNICATIONS, INC.), Plaintiff, v. CB RICHARDS ELLIS, INC. (a/k/a CB COMMERCIAL REAL ESTATE GROUP, a/k/a INSIGNIA/ESG, INC., n/k/a CB RICHARD ELLIS REAL ESTATE SERVICES, INC.), HIGHGATE HOLDINGS, INC., Defendant.**

Civil Action No. 06-400-KAJ

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2006 U.S. Dist. LEXIS 50192*

**July 20, 2006, Decided**

**COUNSEL:** [*1] For EXDS Inc., formerly known as Exodus Communications Inc., Plaintiff: John M. Seaman, Bouchard, Margules & Friedlander, P.A., Wilmington, DE.

For CB Richard Ellis Inc., also known as CB Commercial Real Estate Group also known as Insignia/ESG Inc. also known as CB Richard Ellis Real Estate Services Inc, Defendant: Victoria Watson Counihan, Greenberg Traurig, LLP, Wilmington, DE.

**JUDGES:** Kent A. Jordan, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Kent A. Jordan

**OPINION:**

**MEMORANDUM ORDER**

**I. INTRODUCTION**

Before me is a Motion to Withdraw the Reference to the Bankruptcy Court filed by CB RICHARD ELLIS, INC. ("CBRE") (Docket Item ["D.I"] 1; the "Motion"). The EXDS estate ("EXDS") has not made an objection to Motion and takes the position that, because the demanded jury trial must ultimately be held in this Court, immediate withdrawal is appropriate. (D.I. 2 at 1.) Jurisdiction is appropriate under *28 U.S.C. § 1334(a)*. For the reasons that follow, CBRE's Motion to Withdraw the Reference to the Bankruptcy Court is denied at this time.

**II. BACKGROUND**

On or about September 26, 2001 the Debtor, EXDS, filed a petition for relief under *chapter 11* [*2] *of title 11*

*of the United States Code.* (D.I. 2 at 1.) The effective date of the joint plan of reorganization of the Debtor was June 19, 2002. (*Id* at 1.) On September 25, 2003, EXDS filed a complaint, based on breach of contract and state law causes of action, seeking recovery of a portion of a brokerage commission that CBRE earned upon an EXDS lease. (*Id* at 2.) EXDS, CBRE, and Highgate Holdings, Inc. each have demanded a jury trial. (*Id.*) The parties have been and continue to be engaged in discovery. (*Id.*) On January 20, 2006, EXDS filed its First Amended Complaint against CBRE and Highgate. (*Id.*) On March 15, 2006, CBRE filed the Motion at issue here. (D.I. 2 at 1.) In response, EXDS agrees that, because the demanded jury trial must ultimately be held in this Court, withdrawal is appropriate. (D.I. 3 at 2.)

**III. DISCUSSION**

A motion to withdraw the reference is a decision left to the discretion of the district court. "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." *28 U.S.C. § 157*. This permissive standard [*3] allows the court to withdraw the reference, provided that the movant meets its burden of showing "cause" for the withdrawal. *NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.), 203 B.R. 905, 907 (D.Del. 1996)*. A showing of "cause" is the product of balancing several factors.

The assertion of a right to a jury trial is one factor used to determine whether "cause" exists. *Id. At 907-908.* However, "[a] Defendant's right to a jury trial ... will not be adversely affected by having the Bankruptcy court preside over pretrial matters until the case is ready to be tried in the District Court." *Wakefern Food Corp. v. C&S Wholesale Grocers, Inc. (In re Big V Holding Corp.), 2002 U.S. Dist. LEXIS 12609, No. 00-04372, 01-758, 01-*

*233, 2002 WL 1482392, at *6 (D. Del. 2002).* Other districts in the Third Circuit have made similar findings. *See GE Capital Corp. v. Teo, 2001 U.S. Dist. LEXIS 22266, No. 01-CV-1686, 2001 WL 1715777, *5 (D.N.J. 2001)* ("There is no reason why the Bankruptcy Court may not preside over an adversary proceeding and adjudicate discovery disputes and motions only until such time as the case is ready for trial.").

The Third Circuit has stated that the following factors [*4] should be considered in determining if sufficient "cause" exists to order withdrawal: "the goals promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of debtors' and creditors' resources, and expediting the bankruptcy process." *In re Pruit, 910 F.2d 1160, 1168 (3d Cir. 1990).* The above factors are not exhaustive, however; they represent certain minimum standards. *NDEP Corp., 203 B.R. at 908.* Relevant considerations may also include judicial economy and whether the proceedings involve core or non-core issues. *Hatzel & Buehler inc. v. Orange & Rockland Utils., Inc., 107 B.R. 34, 39 (D. Del 1989).* Judicial economy is an especially important consideration. *See Wakefern Food Corp., 2002 WL 1482392, at *4* (denying defendant's motion to withdraw the reference, in part because of the bankruptcy court's familiarity with the facts and legal issues of the case when it found there was no reason to disturb the present course of the proceedings and denied defendant's motion to withdraw); *GE Capital Corp., 2001 WL 1715777, at *5* [*5] (ruling that removal of the proceedings pre-discovery was unwarranted and noting the bankruptcy court's familiarity with the facts of the case and the resources available to that court).

CBRE argues that the assertion of its right to a jury trial, coupled with the bankruptcy court's lack of authority under *28 U.S.C. § 157(e)* to conduct such a trial, requires withdrawal to the district court. (D.I. 2 at 8.) Although withdrawal would be proper at some future point, logic and the case law in this district, as noted, shows CBRE's right to a jury trial will not be affected by the Bankruptcy Court conducting the pretrial proceedings.

Although CBRE claims that judicial economy is best served by the immediate removal of the proceedings, the contrary is true. *(Id.* at 6.) CBRE's Motion can be better addressed if and when the case is ready to proceed at trail. The First Amended Complaint against CBRE was filed in the Bankruptcy Court six months ago. The original complaint dates back almost three years. As in *Wakefern* and *General Electric,* the Bankruptcy Court here has had significant time to familiarize itself with the underlying facts of this case and the [*6] parties' ongoing discovery. Further, the Bankruptcy Court has the necessary resources to preside over the initial stages

of these proceedings in an efficient and effective manner. CBRE has not provided any persuasive reason why this case requires immediate removal to this court.

## V. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that the Motion is DENIED, without prejudice to CBRE's right to renew the Motion at the conclusion of pre-trial proceedings.

UNITED STATES DISTRICT JUDGE

Wilmington, Delaware
July, 20 2006

**EXHIBIT B**

1 of 1 DOCUMENT

**In re: BIG V HOLDING CORP., et al., Debtors. WAKEFERN FOOD CORP., Plaintiff, v. C&S WHOLESALE GROCERS, INC., Defendant.**

**Chapter 11, Case No. 00-04372 (RTL), (Jointly Administered), Adversary Proceeding No. 01-758, Civil Action No. 01-233 (GMS)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2002 U.S. Dist. LEXIS 12609*

**July 11, 2002, Decided**

**DISPOSITION:** Plaintiff's motion to withdraw reference to bankruptcy was denied.

**COUNSEL:** [*1]  For BIG V HOLDING CORP., debtor: Gregg Mattisen Galardi, Skadden, Arps, Slate, Meagher & Flom, Wilmington, DE.

For WAKEFERN FOOD CORP., plaintiff: Daniel J. DeFranceschi, Richards, Layton & Finger, Wilmington, DE.

For C & S WHOLESALE GROCERS, INC., defendant: Gregory W. Werkheiser, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Gregory Moneta Sleet

**OPINION:**

MEMORANDUM AND ORDER

I. INTRODUCTION

On November 22, 2000, the Debtors, Big V Holding Corp., *et al.*, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Pursuant to *28 U.S.C. § 157*(a), the bankruptcy cases were referred from the United States District Court for the District of Delaware to the United States Bankruptcy Court for the District of Delaware ("the Bankruptcy Court"). n1 Since the petition date, the Debtors have continued in possession of their properties and the management and operation of their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. On December 6, 2000, an Official Committee of Unsecured Creditors ("the Creditors' Committee") was [*2] appointed by the United States Trustee pursuant to *§ 1102 of the Bankruptcy Code*. Presently before the court is the Creditors' Committee's March 20, 2001 motion to withdraw the reference to the Bankruptcy Court. Since Wakefern has yet to assert a proper jury demand, and since considerations of judicial economy favor leaving the adversary proceeding in the Bankruptcy Court until it is ready for trial, Wakefern's motion to withdraw the reference will be denied at this time.

n1 Referral of Title 11 proceedings from the United States District Court for the District of Delaware to the United States Bankruptcy Court for the District of Delaware is automatic pursuant to a Standing Order of Reference dated July 23, 1984.

II. FACTS

Wakefern Food Corporation ("Wakefern"), the plaintiff in this adversary proceeding (the "C&S Action"), is a food cooperative wholesaler that centralizes the purchasing of inventory and supplies for its members. The Debtors have been a member of the Wakefern cooperative since 1959. [*3]  Pursuant to the stockholder agreement and by-laws governing Wakefern members, the Debtors are obligated to purchase approximately 85% of their products from Wakefern.

On August 3, 2000, the Debtors decided that their continued participation in Wakefern was detrimental to their business and, as a result, entered into a supply agreement with C&S Wholesale Grocers, Inc. ("C&S"), a direct competitor of Wakefern. On November 28, 2001, six days after the Debtors filed for relief under chapter 11, Wakefern filed suit against C&S in New Jersey state

court. The complaint alleged that C&S, by executing an agreement with the Debtors, had engaged in tortious interference with Wakefern's contractual relations and had aided and abetted the Debtors' breach of fiduciary duty. The complaint seeks preliminary and permanent injunctions as well as damages. The C&S Action was removed to the United States Bankruptcy Court for the District of New Jersey and was subsequently transferred to the United States Bankruptcy Court for the District of Delaware, the Honorable Raymond T. Lyons presiding. n2

n2 Judge Lyons is a visiting United States Bankruptcy Judge from the District of New Jersey.

[*4]

On March 20, 2001, Wakefern filed a motion to withdraw the reference of the C&S Action to the Bankruptcy Court. C&S objected, arguing that Wakefern had failed to make a simultaneous motion to the Bankruptcy Court for a determination of whether the C&S Action was a "core" or "non-core" proceeding as required by Delaware Local Bankruptcy Rule 5011-1. On May 25, 2001, the Bankruptcy Court issued an order designating the C&S Action as a "non-core" proceeding. Therefore, C&S withdrew its objection to Wakefern's motion to withdraw the reference. The Debtors and the Creditors' Committee, however, have continued to oppose the motion. On January 31, 2001, the Creditors' Committee filed a motion to intervene in the C&S Action, which was granted by the bankruptcy court on February 15, 2001. The court has no record of a motion to intervene being filed by the Debtors.

Central to the C&S Action is the Debtors' termination of the Wakefern supply agreement and execution of the C&S Supply agreement. Before proceeding with the C&S supply agreement, the Debtors sought a declaratory judgment from the Bankruptcy Court in order to determine whether the Debtors would owe a large withdrawal payment to Wakefern [*5] if they proceeded with the C&S supply agreement. On September 14, 2001, in *Big V Supermarkets, Inc. v. Wakefern Food Corp., 267 B.R. 71, 111 (Bankr. D. Del. 2001),* the Bankruptcy Court held that the Debtors would be obligated to make the withdrawal payment. The Bankruptcy Court also made specific findings as to what would constitute a breach of good faith and fair dealing with regards to the Debtors' attempts to abandon the Wakefern supply agreement.

Apart from the declaratory judgment action, the Bankruptcy court has presided over numerous scheduling and pretrial conferences and disputes, including Wakefern's February 9, 2001 motion to compel the Debtors' assumption/rejection of the Wakefern Agreement and C&S's March 28, 2001 motion to dismiss, or in the alternative, to stay proceedings. In sum, the C&S Action is intertwined with several proceedings and matters which are or were before the Bankruptcy Court. Furthermore, Bankruptcy Court Judge Lyons stated that he believes the C&S Action should be adjudicated together with the other actions relating to the bankruptcy case. During a March 28, 2001 scheduling conference, Judge Lyons stated, "I think this is a three [*6] party dispute that should be dealt with together."

One final fact is crucial to the court's analysis of Wakefern's motion. To date, Wakefern has not made any formal demand for a jury trial. However, Wakefern has indicated that they plan to file an amended complaint with the formal jury trial demand after the court decides this motion to withdraw the reference. Wakefern refuses to file the amended complaint for fear that filing a claim in the Bankruptcy Court could constitute consent to the jurisdiction of the Bankruptcy Court and consequently, waiver of the right to a jury trial.

III. DISCUSSION

A. Intervention

Neither the Debtors or the Creditors' Committee are parties to the C&S Action. Therefore, in order for their objection to be heard, they must have properly intervened in the adversary proceeding.

*Federal Rule of Civil Procedure 24(a)(1)* provides that upon timely application anyone shall be permitted to intervene in an action "when a statute of the United States confers an unconditional right to intervene." Both the Debtors and the Creditors Committee believe that they have an unconditional right to be heard under *11 U.S.C. § 1109* [*7] (b), which states, in part, "A party in interest, including the debtor, . . . [or] a creditors' committee . . . may raise and may appear and be heard on any issue in a case under this chapter." Wakefern argues that the C&S Action, an adversary proceeding, is not a "case under this chapter" as required by the statute. Although the circuits are split on whether section 1109(b) confers an unconditional right to intervene, n3 the Third Circuit has taken a clear position on the issue. In *Phar-Mor, Inc. v. Coopers & Lybrand, 22 F.3d 1228, 1241 (3d Cir. 1994),* the Third Circuit held that section 1109(b) gives a creditors' committee an unconditional right to intervene in a non-core adversarial proceeding in federal district court which is "related to" a bankruptcy case.

n3 The Fourth, Fifth, and Eleventh Circuits have held that § 1109(b) does not create an absolute right of intervention in any adversary proceedings, not even those that are brought "under"

2002 U.S. Dist. LEXIS 12609, *

chapter 11. *See Fuel Oil Supply and Terminaling v. Gulf Oil Corp., 762 F.2d 1283, 1286-1287 (5th Cir. 1985); In re Charter Co., 876 F.2d 866, 871 (11th Cir. 1989); Matter of Richman, 104 F.3d 654, 658 (4th Cir. 1997).*

[*8]

A civil proceeding is "related to" bankruptcy when the outcome of that proceeding could conceivably have any effect on the estate being administered. *See Halper v. Halper, 164 F.3d 830, 837 (3d Cir. 1999).* The complaint in the adversary proceeding between Wakefern and C&S seeks an injunction against the Debtors' supply agreement with C&S. Thus the adversary proceeding clearly affects the Debtors' estate and their ability to reorganize. Moreover, the procedural history of the C&S Action indicates that it is "related to" the bankruptcy. The proceeding was removed from state court pursuant to *28 U.S.C. § 1452*(a), which allows a party to remove a cause of action that is "related to" a bankruptcy case. Furthermore, the C&S Action was referred to the Bankruptcy Court pursuant to *28 U.S.C. § 157*(a), which mandates that proceedings "related to" a case under title 11 shall be referred to the bankruptcy judges for the district. Therefore, the C&S Action clearly satisfies the "related to" requirement.

Since the C&S Action is "related to" the bankruptcy, the *Phar-Mor* holding dictates that the Debtors and Creditors' Committee [*9] have an unconditional right to intervene under section 1109(b). n4 In the instant proceeding, the Creditors' Committee has properly filed a motion to intervene and has otherwise complied with the requirements for intervention pursuant to Rule 24(c). Therefore, since *11 U.S.C. § 1109*(b) gives a creditors' committee an unconditional right to intervene in light of *Phar-Mor*, the Creditors' Committee is a proper intervenor in this matter pursuant to Rule 24(a)(1). n5

n4 Bankruptcy Rule 7024, the sole Bankruptcy rule governing intervention in an adversary proceeding, merely adopts *Federal Rule of Civil Procedure 24.*

n5 Based upon the current record, the court has been unable to determine whether the Debtors have filed a timely motion to intervene. Therefore the Debtors will not be considered a proper intervenor in this proceeding for purposes of Wakefern's motion to withdraw the reference; however, the Creditors' Committee's opposition to the motion should adequately represent the interest of the Debtors.

[*10]

B. Mandatory v. Permissive Withdrawal of the Reference

The C&S Action was referred to the Bankruptcy Court pursuant to *28 U.S.C. § 157*(a). The procedure governing withdrawal of the reference to the Bankruptcy Court is stated in *28 U.S.C. § 157*(d), which reads,

> "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." *28 U.S.C. § 157*(d).

The first sentence of this statute describes the conditions under which withdrawal is permissive, while the second sentence describes the conditions under which withdrawal is mandatory. Since the C&S Action involves only state law tort and contract claims, it clearly does not meet the requirements for mandatory withdrawal. Therefore, the permissive withdrawal standard [*11] applies. Under this standard, the court may withdraw the reference of the adversary proceeding "for cause shown." *See 28 U.S.C. § 157*(d).

As the movant in this case, Wakefern bears the burden to show cause. *NDEP Corp. v. Handl-It, Inc., 203 B.R. 905, 907 (D. Del. 1996).* The statute does not define "cause," but guideposts exist to elucidate the meaning of the word. The Third Circuit has stated that a court should consider: "the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process." *In re Pruitt, 910 F.2d 1160, 1168 (3d Cir. 1990).* However, the "factors listed in *Pruitt* were not designed to be exhaustive; they are only minimal standards." *NDEP Corp., 203 B.R. at 908.* Relevant considerations might also include "the nature of the proceedings (*i.e.*, core or non-core) and judicial economy." *Hatzel & Buehler, Inc. v. Orange & Rockland Utils., Inc., 107 B.R. 34, 39 (D. Del. 1989).* Another factor which should be considered is "whether the [*12] parties have requested a jury trial." *Hatzel & Buehler, Inc. v. Central Hudson Gas & Elec. Corp., 106 B.R. 367, 371 (D. Del. 1989).* The court will now consider these factors.

C. Factors to Consider in Determining Whether to Withdraw the Reference

1. Core v. Non-Core and Judicial Economy

There are strictures upon the Bankruptcy Court's authority to hear and determine non-core proceedings that do not apply in the instance of core proceedings. *See 28 U.S.C. § 157(b)(1).* Thus, a determination of whether the C&S Action is a core or non-core proceeding is crucial to the determination of the Creditors' Committee's motion. In an Order dated May 25, 2001, the Bankruptcy Court declared that the current adversary proceeding is non-core. No party has challenged the Bankruptcy Court's ruling, therefore, the court concludes the C&S Action is a non-core proceeding.

Moving to the question of judicial economy, the court believes the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process, as [*13] set forth in *Pruitt, 910 F.2d at 1168,* would seem to be best served by leaving the C&S Action in the Bankruptcy Court. n6

n6 The court is aware that courts in this district have held that "judicial economy favors permissive withdrawal of the reference of a non-core proceeding, since the district court would still need to review the merits of the dispute when considering the bankruptcy court's proposed findings of fact and conclusions of law." *NDEP Corp., 203 B.R. at 908,* (paraphrasing *Hatzel & Buehler, Inc. v. Orange & Rockland Utils., Inc., 107 B.R. 34, 39 (D. Del. 1989)).* Given the facts and circumstances of this case, the court declines to follow this precedent.

The Bankruptcy Court is intimately familiar with the numerous complex issues surrounding the C&S Action. In fact, on September 14, 2001, the Bankruptcy Court issued a declaratory judgment in a separate adversary proceeding to this bankruptcy case which is interrelated with the C&S Action. *See Big V Supermarkets, Inc., 267 B.R. 71.* [*14] In that proceeding, the Bankruptcy Court held that Wakefern would be entitled to a withdrawal payment if the Debtors were to proceed with their supply agreement with C&S. *Id. at 111.* Furthermore, the Bankruptcy Court made specific findings as to what would constitute a breach of good faith and fair dealing with regard to the Debtors' attempts to abandon the Wakefern supply agreement. *Id.* Thus, it is apparent that the Bankruptcy Court is very familiar with the facts and issues which are crucial to the determination of the C&S Ac-

tion. Specifically, the Bankruptcy Court has become familiar with important provisions of Wakefern's By-Laws and Stockholders' Agreement, all of which are crucial to the C&S Action. In sum, the Bankruptcy Court has already expended invaluable time and energy familiarizing itself with the facts and issues surrounding the C&S Action. Considerations of judicial economy thus weigh in favor of leaving the case with the Bankruptcy Court. *See Northwestern Institute of Psychiatry, Inc. v. Travelers Indem. Co., 272 B.R. 104, 109 (E.D. Pa. 2001)* ("The bankruptcy court is familiar with the parties, the factual background of the case [*15] and the legal issues involved. Therefore, this court finds no reason to disturb the present course and it declines to withdraw the reference as judicial economy will be served by allowing the adversary action to remain in bankruptcy court").

2. Right to a Jury Trial

The right to a jury trial is an important factor in determining a motion to withdraw the reference. This is so because absent the express consent of both parties and a special designation of jurisdiction by the district court, the Bankruptcy Court may not hold a jury trial in a non-core proceeding. *See 28 U.S.C. § 157(e).*

It is clear that Wakefern has a constitutional right to a jury trial in this case. The Seventh Amendment states, "In Suits at common law where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . ." U.S. CONST. amend. VII. In *Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 41, 106 L. Ed. 2d 26, 109 S. Ct. 2782 (1989),* the Supreme Court explained that "suits at common law" referred to controversies in which legal rights were to be determined, as distinguished from cases in which only equitable rights were [*16] recognized and only equitable remedies were administered. Furthermore, the Court stated that the Seventh Amendment only requires a jury trial if a cause of action is legal in nature and it involves a matter of private right. *Id. at 42 n.4.* The C&S Action, a contract and tort action for damages, is clearly legal in nature and involves a matter of private right. *See NDEP Corp., 203 B.R. at 909.*

However, although Wakefern has a right to a jury trial of the C&S Action, a proper jury demand has not been made. Wakefern has stated that upon the court's determination of this motion to withdraw the reference, it will file the amended complaint containing a demand for a jury trial. While Wakefern's intention to formally demand a jury trial is duly noted, the fact remains that they have not yet done so. Wakefern is reluctant to file an amended complaint with a jury demand because it believes, not without reason, that filing an amended complaint could quite possibly constitute waiver of their Seventh Amendment right to have their claims tried by

jury. *See Billing v. Ravin, Greenberg & Zackin, P.A., 22 F.3d 1242, 1250-1253 (3d Cir. 1993)* (identifying [*17] two theories whereby courts have divested parties of their rights to a jury in the bankruptcy context. Under the "waiver theory," a party can lose its right to a jury trial by voluntarily submitting to the jurisdiction of the bankruptcy court through the filing of a petition or claim in the bankruptcy court).

Although Wakefern may be entitled to a jury trial, their potential entitlement at some future date is not sufficient grounds to withdraw the reference at this time. Withdrawal of the reference based on the ground that a party is entitled to a jury trial should be deferred until the case is "trial ready." *See In re Northwestern Institute of Psychiatry, Inc., 268 B.R. 79, 84 (E.D. Pa. 2001)* (citing *In re Commercial Financial Services, Inc., 239 B.R. 586, 596 (N.D. Okla. 1999); see also Barlow & Peek, Inc. v. Manke Truck Lines, Inc., 163 B.R. 177, 179 (D. Nev. 1993)* (refusing to withdraw reference until "it is clear that a jury trial will be necessary and that the case is prepared and ready for such trial to commence"). It would be premature to withdraw the reference to the bankruptcy court based upon the unfixed proposition that [*18] a jury trial may occur in the future. At the present time, the case is not ready for trial. Assuming that Wakefern does file the amended complaint containing a proper jury demand, a jury trial may not be necessary in order to resolve the C&S Action. During the March 28, 2001 scheduling conference in connection with the C&S Action, Bankruptcy Court Judge Lyons stated that this case "cries out for settlement." Until Wakefern properly asserts their right to a jury trial, the C&S Action should remain in the Bankruptcy Court.

The court is persuaded that Wakefern's right to a jury trial, if properly asserted in the future, will not be adversely affected by having the Bankruptcy Court preside over pretrial matters until the case is ready to be tried in the District Court. Until that time, the bankruptcy judge can serve basically the same function as a magistrate. *See In re Delaware and Hudson Ry. Co., 122 B.R. 887, 897 (D. Del. 1991).*

IV. CONCLUSION

In this case, judicial economy weighs heavily in favor of leaving the C&S Action in the Bankruptcy Court, since that court has already issued a declaratory judgment in an adversarial proceeding which is factually [*19] and legally interrelated with the C&S Action. Withdrawal of the reference at this point based on Wakefern's right to a jury trial would be premature, since Wakefern has yet to officially file a jury demand.

The court will deny Wakefern's motion to withdraw the reference, but will do so without prejudice. When the C&S Action is ready for trial, Wakefern may file a renewed motion to withdraw the reference.

For the foregoing reasons, IT IS HEREBY ORDERED that:

> 1. Wakefern's request for withdrawal of the reference to bankruptcy is DENIED;
>
> 2. This denial is without prejudice to Wakefern's ability to renew its request for withdrawal of the reference at a later time, when a jury trial has been properly demanded and the case becomes ready for trial.

Dated: July 11, 2002

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

**EXHIBIT C**

LEXSEE 2001 U.S. DIST. LEXIS 22266

**GENERAL ELECTRIC CAPITAL CORPORATION, Plaintiff, v. ALFRED TEO, Defendant.**

**Civ. No. 01-CV-1686(WGB)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

*2001 U.S. Dist. LEXIS 22266*

**December 14, 2001, Decided**

**NOTICE:** [*1]  NOT FOR PUBLICATION

**DISPOSITION:** Defendant's motion to withdraw reference to the Bankruptcy Court dismissed without prejudice. Defendant leave to reinstate his motion at the conclusion of all pre-trial proceedings granted.

**COUNSEL:** Edward T. Dartley, Esq., John K. Sherwood, Esq., LOWENSTEIN SANDLER PC, Roseland, New Jersey, for Plaintiff.

Kurt W. Hansson, Esq., Leslie A. Plaskon, Esq., Adrienne B. Alexander, Esq., PAUL, HASTINGS, JANOFSKY & WALKER LLP, Stamford, Connecticut, for Plaintiff.

Peter R. Bray, Esq., BRAY CHIOCCA ROTHSTADT & MILLER, L.L.C., Parsippany, New Jersey, for Defendant.

**JUDGES:** WILLIAM G. BASSLER, U.S.D.J.

**OPINION BY:** WILLIAM G. BASSLER

**OPINION:** BASSLER, DISTRICT JUDGE:

Defendant Alfred Teo moves the Court to withdraw reference to the Bankruptcy Court of a tort action commenced against him by Plaintiff General Electric Capital Corporation ("GECC"). Given the common pre-trial issues that predominate this action and approximately 12 creditor preference proceedings currently pending before the Bankruptcy Court, the Court will **dismiss** Defendant's motion to withdraw reference **without prejudice** at this time. Defendant is **granted** leave to reinstate his motion after [*2]  the Bankruptcy Court has concluded all pre-trial proceedings, and after the Bankruptcy Court has made a determination of whether the proceeding instituted by GECC against Defendant is core or non-core.

**I. BACKGROUND**

Zeta Consumer Products Corp. ("Zeta" or "Debtor") was in the business of manufacturing consumer and industrial plastic trash bags, cups, plates, and plastic housewares, at facilities throughout the United States. (Complaint P 3). In the ordinary course of its business, Zeta would purchase and utilize certain raw materials, commonly referred to as Resins, in its manufacturing process. (Id.)

On April 25, 2000, Zeta filed for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey. n1 Plaintiff GECC is a secured creditor in Zeta's bankruptcy action. GECC's claims against Zeta stem from revolving credit loans made to Zeta under a Loan and Security Agreement executed on May 8, 1998. (Complaint P 8). As of April, 2000, Zeta allegedly owed GECC approximately $ 16.5 million under the Loan Agreement. (Complaint P 10).

n1 Case No. 00-34148 (NLW). That matter is currently pending before the Hon. Novalyn L. Winfield, United States Bankruptcy Judge.

[*3]

The Loan from GECC to Zeta was secured in part by collateral that included "all of [Zeta's] personal property and assets, whether tangible or intangible, and whether now owned or hereafter acquired, or in which it now has or at any time in the future may acquire any right, title, or interest..." (Complaint P 12). This personal property included Zeta's Resin stockpiles, located at its facilities around the country. (Complaint PP 13, 17).

At the time Zeta became insolvent and sought bankruptcy protection, Defendant Alfred Teo was Co-Chief Executive Officer, Secretary, and a director of Zeta.

(Complaint P 3). Defendant Teo is also an officer of Alpha Industries, Inc. ("Alpha"), and allegedly an officer of other companies, all of whom manufacture consumer and industrial plastic. (Complaint P 4). Allegedly, these other companies acquire Resin from the same vendors who had supplied Resin to Zeta. (Id.)

Plaintiff contends that in April, 2000 Defendant Teo, knowing of Zeta's dire financial circumstances, directed the Resin vendors to reclaim the stockpiles of Resin that they had supplied to Zeta, "for the purpose, upon information and belief, of satisfying outstanding accounts with [*4] those vendors, to the frustration of GE Capital's security interest in those Resins. Upon information and belief, Defendant Teo directed the removal and/or return of such resins in order to maintain amicable business relationships with such vendors in furtherance of Teo's personal financial interests and for the benefit of Teo's other business ventures, including, but not limited to, Alpha." (Complaint PP 17-19). Plaintiff alleges that Defendant Teo engaged in the Resin transfers despite express language in the Loan and Security Agreement that required GECC's written consent before the liquidation of any assets. (Complaint P 14). The transferred Resins were allegedly valued at approximately $ 2.6 million. (Complaint P 22).

After Debtor Zeta sought Chapter 11 protection, because of Teo's allegedly improper Resin transfers Plaintiff GECC commenced this adversary proceeding in the United States Bankruptcy Court for the District of New Jersey on February 28, 2001. n2 In its Adversary Complaint, GECC brought claims against Teo for Conversion, Breach of Fiduciary Duty, Tortious Interference with Contract, Tortious Interference with Prospective Economic Advantage, and Negligently Caused [*5] Economic Loss.

n2  Plaintiff contends that jurisdiction is proper before the Bankruptcy Court pursuant to *28 U.S.C. § 1334(b)* and *28 U.S.C. § 157(c)*. For reasons that will be subsequently detailed, the Court agrees.

According to Plaintiff, Defendant Teo's Resin transfers have been actively litigated in the bankruptcy case since its commencement in April, 2000. In addition to the Resin transfers allegedly having resulted in a reservation of rights as to recovery of collateral in a final order authorizing debtor-in-possession financing by GECC (Order attached as Ex. E to Dartley Decl.), Plaintiff contends that Teo's diversion of the Resins has prompted the Debtor to commence twelve adversary proceedings in the Bankruptcy Court against various vendors of the Resin, seeking recovery of preferences and/or fraudulent trans-

fers. Discovery in at least eleven of these preference actions is still on-going.

In response to GECC's Adversary Complaint, on April 4, 2001 Defendant [*6] Teo filed an Answer and Affirmative Defenses with the Bankruptcy Court. Simultaneously, he asked the Bankruptcy Court to abstain from hearing the matter, and asked this Court to withdraw reference of the matter from the Bankruptcy Court. In his Answer, Defendant Teo expressly reserved the right to file a separate suit against Plaintiff or to file a counterclaim after his application for abstention or withdrawal of reference had been ruled on.

By letter, the parties asked this Court to delay consideration of the motion to withdraw reference until after the bankruptcy court had the opportunity to rule on Defendant's motion for abstention. At a hearing on June 4, 2001, Judge Winfield denied Defendant's request for abstention. (Transcript of June 4, 2001 Hearing attached as Ex. A to Plaintiff's Opposition to Withdrawal of Reference). After affirmatively declining to express an opinion on whether the reference of this matter ought to be withdrawn, (6/4/2001 Tr. 17:12-13), Judge Winfield found that there were no factors present that might support abstention.

After Judge Winfield's ruling, upon request this Court allowed the parties an additional period of time for briefing of the withdrawal [*7] of reference issue. The matter is now before the Court for decision.

## II. DISCUSSION

When confronted with a bankruptcy dispute, a district court shall, pursuant to *28 U.S.C. § 157(a)*, refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . to the bankruptcy judges for the district." In keeping with § 157(a), *28 U.S.C. § 157(b)(1)* provides that the merits of certain "core" bankruptcy matters may be heard and ruled on by the bankruptcy court. For other "non-core" matters that are related to bankruptcy proceedings but are not central to them, a bankruptcy judge may not enter judgment on the merits, but must instead enter proposed findings of fact and conclusions of law that are reviewed *de novo* by the District Court. *28 U.S.C. § 157(c)(1)*.

A district court "may withdraw, in whole or in part, any case or proceeding referred under [§ 157] on its own motion or on timely motion of any party, for cause shown." *28 U.S.C. § 157(d)*. Pursuant to § 157(d), Defendant has asked the Court to withdraw reference [*8] of Plaintiff's action, so that the matter may be tried before a jury in this Court.

In his reply papers, Defendant Teo argues for the first time that the Bankruptcy Court lacks subject matter

jurisdiction over this proceeding, and that as a result the Court should withdraw reference. n3 The Court can dispose of this argument in short order. For subject matter jurisdiction to exist before a Bankruptcy Court, there must exist some nexus between a "related" civil proceeding and the title 11 bankruptcy case. *Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1994)*, overruled on other grounds by *Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 134-35. 133 L. Ed. 2d 461, 116 S. Ct. 494 (1995)*. "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Id.

> n3 It is uncontested that this Court would have diversity jurisdiction over Plaintiff's action pursuant to *28 U.S.C. § 1332*, as the parties are citizens of different states and the amount in controversy exceeds $ 75,000.

[*9]

In determining whether this proceeding is related to Zeta's bankruptcy, the Court finds several statements that were made before Judge Winfield to be of assistance. When setting the stage for why this dispute impacts Zeta's bankruptcy, Plaintiff's counsel stated that, "should G.E. succeed in this action, we believe the Committee would have grounds for equitably subordinating [Teo's] claim and possibly re-ordering the priorities in the claim distribution scheme." (6/4/2001 Tr. 10:9-12). Plaintiff's counsel reached this conclusion because GECC "is basically suing Mr. Tao [sic] for diverting property of the estate which also happens to be GE's collateral. I don't know how much more related you can get to this case especially when you've got twelve pending resin actions." (6/4/2001 Tr. 16:14-18).

The Court agrees entirely with Plaintiff's reasoning. Based on the proof of claim Teo filed in the bankruptcy action, it appears to the Court that Defendant is the single largest creditor of Zeta. As Judge Winfield noted at the hearing, if Teo's claims were subordinated "there is a possibility that depending on how this matter adjudicates it could favorably effect the likelihood of recovery [*10] to the unsecured creditor class." (6/4/2001 Tr. 20:2-4). In such a circumstance, the Court must conclude that this matter is related to the underlying bankruptcy proceeding, and that as a result the Bankruptcy Court has jurisdiction to hear it. Cf. *In re Trans-end Technology, Inc.,1998 Bankr. LEXIS 857, 1998 WL 404184* (Bankr.N.D.Ohio May 28, 1998)(failing to find jurisdiction over a third party adversary proceeding, but holding that it was "not a situation involving a third party action

brought by a creditor against officers or shareholders of the Debtor which would impact the administration of the Debtor's Bankruptcy Estate"), citing *Travelers Ins. Co. v. Goldberg, 135 B.R. 788 (D.Md. 1992)*(creditor's actions against former general partners of debtor's general partner were related to the bankruptcy case where the resulting judgment would likely impact the estate's liability to remaining creditors); *In re Pal Nissan, Inc., 126 B.R. 966 (Bankr. N.D Mich. 1991)*(holding that creditor's conversion claims asserted against non-debtor shareholders of corporate debtor constituted a non-core "related" proceeding).

Having concluded that the Bankruptcy Court could [*11] hear this matter, the Court must next determine whether the Bankruptcy Court should hear this matter. In guiding those district courts that have been asked to rule on motions to withdraw reference, the Third Circuit has opined that:

> the district court should consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process.

*In re Pruitt, 910 F.2d 1160, 1168 (3d Cir. 1990)*, quoting *Holland America Ins. Co. v. Succession of Roy, 777 F.2d 992, 999 (5th Cir. 1985)*. In his initial moving papers, the only factors that Teo advanced to support withdrawing the reference of this matter were that the action commenced by GECC is a non-core proceeding, and that his right to a trial by jury would be violated if the matter were not withdrawn from the Bankruptcy Court.

Assuming for purposes of argument that GECC's action is a non-core proceeding, the Court is mindful that "proceedings should not be withdrawn for the sole reason that they are non-core." *Katzev v. Dunavant, 1997 U.S. Dist. LEXIS 18518, 1997 WL 786461, [*12] *5 (E.D. Pa. 1997)*, quoting *Hatzel & Buehler, Inc. v. Central Hudson Gas & Elec. Corp., 106 B.R. 367, 371 (D.Del. 1989)*. Instead, "the 'cause shown' requirement in section 157(d) creates a 'presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court unless rebutted by a contravening policy.'" Id. (internal citations omitted); see also *Valley Forge Plaza Assoc. v. Fireman's Fund Ins. Cos., 107 B.R. 514, 518 (E.D. Pa. 1989)*.

The only argument relied on by Defendant that rises to the level of a "contravening policy" is that failure to

withdraw the reference of this matter would violate his Seventh Amendment right to a jury trial. The Third Circuit noted in Beard v. Braunstein that :

> The Seventh Amendment limitations on the review of jury findings are not compatible with section 157(c)(1), which requires that any contested finding by the bankruptcy court must be reviewed *de novo*. By the Seventh Amendment, any fact found by a jury cannot be reviewed *de novo*. Accordingly, a bankruptcy court cannot conduct a jury trial in a non-core proceeding.

*914 F.2d 434, 443 (3d Cir. 1990).* [*13] Given the Third Circuit's clear prohibition on bankruptcy jury trials in non-core proceedings, assuming without deciding that Defendant has a valid right to a jury trial, Defendant's right would be violated if this Court declined to withdraw the matter, and if the matter were ultimately decided by the Bankruptcy Court on its merits without a jury.

Even though decisions in this district have held that a defendant's "showing that it is entitled to a jury trial which it would be unable to receive in a bankruptcy court . . . is enough to establish 'cause' requiring withdrawal of reference," *In re System Freight, Inc., 1991 U.S. Dist. LEXIS 2674, 1991 WL 33150, *4* (D.N.J. March 6, 1991), the mere fact that a Defendant has asserted a right to trial by jury is not sufficient to immediately justify withdrawal of an action from bankruptcy. The Second Circuit has suggested that:

> If a case is non-core and a jury demand has been filed, a district court might find that the inability of the bankruptcy court to hold the trial constitutes cause to withdraw the reference. However, a district court also might decide that a case is unlikely to reach trial, that it will require protracted discovery [*14] and court oversight before trial, or that the jury demand is without merit, and therefore might conclude that the case at that time is best left in the bankruptcy court.

*In re Orion Pictures Corp., 4 F.3d 1095, 1101-02 (2d Cir. 1993).* In keeping with this suggestion, courts in this district and elsewhere have held that even when a district

court must ultimately preside over a trial by jury, there is no reason why the Bankruptcy Court may not "preside over [an] adversary proceeding and adjudicate discovery disputes and motions only until such time as the case is ready for trial." *In re Lands End Leasing, Inc., 193 B.R. 426, 436 (Bankr.D.N.J. 1996),* citing *In re Keene Corp, 182 B.R. 379, 385 (S.D.N.Y. 1995)*(denying on ripeness grounds motion to withdraw the reference, reasoning that while an adversary proceeding carrying the right to a jury trial is in its initial stages, the bankruptcy judge "is fully equipped with the tools to proceed with [the] matter" until such time as the issues are ripe for submission to the jury), and *Hayes v. Royala, Inc., 180 B.R. 476, 477 (E.D.Tex. 1995)*(explaining that the inability [*15] of a bankruptcy judge to preside over a jury trial absent the parties' consent does not require withdrawal of the reference to the bankruptcy court until it is clear that the issues are ready for consideration by a jury).

Despite Defendant's demand for a jury trial, the Court concludes that GECC's action is best left before the Bankruptcy Court, at least until all pre-trial matters have been resolved. The Court reaches this conclusion because consideration of the Pruitt factors demonstrates that leaving the dispute before the Bankruptcy Court would promote uniformity in bankruptcy administration, reduce confusion, foster the economical use of the debtors' and creditors' resources, and most importantly expedite the bankruptcy process. Judge Winfield's own words provide evidence of this:

> I think also I would point out that I think this Court from a -- I guess I would characterize it as a judicial economy point of view has probably the most familiarity with all of the proceedings in this case in addition to the preference suits and you can characterize them as you wish, but I mean the bottom line much of the factual basis is the same both for this suit and the preference [*16] suits. It's just the legal theories are different. Those are all known to the Court. I've already entered some scheduling orders in those. That issue has been present in the case for at least the last -- I don't know -- four to six months area. It's an area of great familiarity to the Court. I don't think it would be burdensome on this Court's docket to hear this related matter and recollect that this Court is obviously familiar with the bankruptcy proceeding in its entirety.
>
> I also think there is a possibility that depending upon how this matter adjudi-

cates it could favorably effect the likeli-hood of a recovery to the unsecured credi-tor class.

(6/4/2001 Tr. 19:12-20:4).

Because there is substantial factual overlap between this dispute and the twelve vendor preference suits cur-rently pending in the Bankruptcy Court, resources would be conserved by engaging in coordinated discovery. Fur-ther, because this dispute has the potential to seriously impact the underlying bankruptcy proceedings, any or-ders issued in this dispute should be consistent with the orders entered by the Bankruptcy Court in the preference suits. Also, because final resolution of the merits of this suit might [*17] necessitate a reordering of the creditor priorities in the bankruptcy action, the Bankruptcy Court would be in a better position to shepard this dispute along, so that trial of this dispute can occur prior to final resolution of the bankruptcy proceeding. Lastly, because there exists the prospect that this dispute will be resolved prior to trial, Defendant's argument regarding his right to a trial by jury might eventually be mooted, thus defeating the sole argument asserted by Defendant in favor of withdrawal. Given all of these factors, and for other good cause shown by Plaintiff, the Court will deny Defen-dant's motion without prejudice, until such time as a jury trial becomes necessary.

Because the Court has essentially elected to put off final decision on withdrawal until another day, the ques-tion of whether this is a core or non-core dispute need not be resolved at present. The determination of whether the action against Teo is a core proceeding or a non-core proceeding will ultimately have to be resolved, however, because if the matter is a core proceeding then even if Teo's right to a jury trial persists, the Bankruptcy Court would be able to conduct a jury trial on the merits. [*18]

Although Plaintiff essentially conceded in its com-plaint that this proceeding is non-core, as mandated by 28 U.S.C. § 157(b)(3) a determination should initially be made by the Bankruptcy Court. n4 See Richard M. Cieri, Neil P. Olack, Joseph M. Witalec, Protecting Technology and Intellectual Property Rights When a Debtor Infringes on Those Rights, 8 Am. Bankr. Inst. L. Rev. 349, 371 (2000) ("Although the district court must decide the mo-tion to withdraw the reference under 28 U.S.C. § 157(d), the issue of whether the proceeding is core or non-core is determined in the first instance by the bankruptcy court. Accordingly, if a party seeks withdrawal of the reference on the basis that a proceeding is non-core, the district court may defer its determination of the withdrawal mo-tion until the bankruptcy court first determines if the underlying action is core or non-core"); See also Travel-lers International v. Robinson, 982 F.2d 96, 97-98 (3d

Cir. 1992); Dailey v. First Peoples Bank of Jersey, 76 B.R. 963, 968-969 (D.N.J. 1987); Hatzel & Buehler, Inc. v. Central Hudson Gas & Electric Corp., 106 B.R. 367, 368 (D. Del. 1989); [*19] Mellon v. Delaware & Hud-son Railway Co., 122 B.R. 887, 891 (D. Del. 1991); Young v. Snider, 1994 U.S. Dist. LEXIS 2901 (E.D.Pa. 1994).

N4 28 U.S.C. § 157(b)(3) provides in rele-vant part:

The bankruptcy judge shall deter-mine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11.

Neither party asked the Bankruptcy Court to deter-mine whether the suit commenced by Plaintiff is a core proceeding, although Plaintiff did suggest in its opposi-tion brief to Defendant's withdrawal motion that the pro-ceeding might be a core matter. After recognizing Plain-tiff's suggestion that this might be a core dispute, the Bankruptcy Judge specifically declined to reach the is-sue, but did hint that the matter was likely not a core proceeding. n5

n5 Judge Winfield had this to say at the hear-ing on June 4, 2001:

It is my view as it sits here - as I said to counsel at the outset, I thought I would have a hard time keeping a straight face finding it to be a core proceeding but I didn't want to preclude them from argu-ing to the contrary and I don't know that we argued that issue.

(6/4/2001 Tr. 22:5-9).

[*20]

Judge Winfield's comments aside, if Defendant in-tends to re-submit his motion to withdraw reference prior to a jury trial, the Court would ask the Bankruptcy Court to first make a determination of whether the action com-menced by Plaintiff is a core or non-core proceeding.

This ruling will greatly speed the Court's eventual analysis of whether withdrawal for a final trial on the merits is ultimately warranted.

As a final matter, the Court will touch upon the question of whether Defendant will waive his right to a jury trial by filing a counterclaim against Plaintiff in the Bankruptcy Court. Some courts have suggested that a Defendant who objects to the Bankruptcy Court's jurisdiction in an adversary proceeding waives that objection by filing a counterclaim before the Bankruptcy Court. That result seems to be of concern to Defendant Teo, because he has elected to await this Court's ruling on the withdrawal issue prior to filing a counterclaim with the Bankruptcy Court.

Defendant Teo may rest assured that the Third Circuit embraced a rule that protects his jurisdictional objections when it held that a "defendant does not waive objections to jurisdiction and venue by asserting a compulsory [*21] counterclaim." *Beard v. Braunstein, 914 F.2d 434, 442 (3d Cir. 1990).* Accordingly, even if Defendant Teo files a counterclaim with the Bankruptcy Court, he can still object to the Bankruptcy Court's jurisdiction over the merits of his claim, and seek withdrawal prior to trial so that this Court may try the matter before a jury.

That having been said, Defendant's objections to the Bankruptcy Court's jurisdiction might not be preserved forever. Plaintiff contends that because Defendant filed a proof of claim in the Zeta bankruptcy, he has submitted himself to the jurisdiction of the Bankruptcy Court and therefore has waived his right to a jury trial. Although the Court does not embrace such an expansive jurisdictional impact of the filing of a proof of claim, the Court notes that Defendant's proof of claim still may come to haunt him. If the Bankruptcy Trustee should join into Plaintiff's action against Defendant, Defendant's right to a jury trial would likely be waived. The Court reaches this conclusion because of Supreme Court precedent to the effect that when a creditor submits a proof of claim against the estate, that creditor submits itself to the jurisdiction [*22] of the bankruptcy court as to disputes against the estate. See *In re Robert H. Kraeger Co., 1999 Bankr. LEXIS 615, 1999 WL 342762, *6* (Bankr.E.D.Pa. May 24, 1999), citing *Langenkamp v. Culp, 498 U.S. 42, 112 L. Ed. 2d 343, 111 S. Ct. 330 (1990)(per curiam)* and *Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 106 L. Ed. 2d 26, 109 S. Ct. 2782 (1989).* Although the Court is unaware of any decision expanding the Langenkamp and Granfinanciera decisions to actions commenced in Bankruptcy Court against a creditor by a third party, the Court would welcome additional briefing on the issue should Defendant eventually elect to re-file his motion for withdrawal of reference.

## III. CONCLUSION

Defendant's motion to withdraw reference to the Bankruptcy Court is dismissed without prejudice. The Court grants Defendant leave to reinstate his motion at the conclusion of all pre-trial proceedings, and after the Bankruptcy Court has had an opportunity to make an initial determination as to whether GECC's action is a core or non-core proceeding.

An appropriate order follows.

WILLIAM G. BASSLER, U.S.D.J.

Dated: [*23] December 14, 2001

**EXHIBIT D**

**ALYSSA GIOIA GUCCI (a minor suing by her Next Friend Stephen Armstrong) and GABRIELE PAOLO GUCCI (a minor suing by his Next Friend Stephen Armstrong) and PENELOPE JAYNE ARMSTRONG, Plaintiffs, -v- JENNIFER PUDDEFOOT GUCCI and FRANK G. SINATRA, as Trustee of Paolo Gucci et. al, Defendants.**

96 Civ. 8216 (JSR)

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*1997 U.S. Dist. LEXIS 3001*

**March 17, 1997, Decided
March 17, 1997, FILED**

**DISPOSITION:** [*1] Plaintiffs' motion to withdraw reference denied without prejudice to the motion being renewed.

**COUNSEL:** For ALYSSA GIOLA ALYSSA GIOLA GUCCI (A MINOR SUING BY HER NEXT FRIEND STEPHEN ARMSTRONG), GABRIELE PAOLO GABRIELE PAOLO GUCCI (A MINOR SUING HIS NEXT FRIEND STEPHEN ARMSTRONG), PENELOPE JAYNE ARMSTRONG, plaintiffs: David C. Erdos, Erdos & Maddox, L.L.C., Stamford, CT.

For FRANK G. SINATRA, as Trustee of Paolo Gucci et. al., defendant: Jonathan L. Flaxer, Winick & Rich, New York, NY.

For FRANK G. SINATRA, counter-claimant: Jonathan L. Flaxer, Winick & Rich, New York, NY.

For ALYSSA GIOLA ALYSSA GIOLA GUCCI (A MINOR SUING BY HER NEXT FRIEND STEPHEN ARMSTRONG), GABRIELE PAOLO GABRIELE PAOLO GUCCI (A MINOR SUING BY HIS NEXT FRIEND STEPHEN ARMSTRONG), PENELOPE JAYNE ARMSTRONG, counter-defendants: David C. Erdos, Erdos & Maddox, L.L.C., Stamford, CT.

**JUDGES:** JED S. RAKOFF, U.S.D.J.

**OPINION BY:** JED S. RAKOFF

**OPINION:**

MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.

On December 6, 1996, the Court granted defendants' motion to refer this action to the Bankruptcy Court, in which the Honorable Judge Jeffry H. Gallet was (and still is) presiding over a related action concerning the Bankruptcy Estate [*2] of Paolo Gucci. Thereafter, the plaintiffs, upon informing Judge Gallet pursuant to *28 U.S.C. § 157*(e) that they would not consent to a jury trial before the Bankruptcy Court, moved this Court to withdraw the reference. See *28 U.S.C. § 157*(d).

While there is no question that this case must return the District Court if and when there is a jury trial, at the present infant stage of the proceeding the issue of withdrawal is discretionary and turns largely on considerations of judicial economy. See *In re Kenai Corp., 136 Bankr. 59, 61 (S.D.N.Y. 1992)*. As this Court explicitly held in its Memorandum Order referring the case to Judge Gallet, "the interests of judicial economy will well be served by having this case before [the Bankruptcy] Court that already has such extensive knowledge of the complex underlying transactions and occurrences." Gucci v. Gucci, No. 96 Civ. 8216 (12/6/96 Memorandum Order). Nothing in the intervening weeks has altered the Court's view of that conclusion. While Judge Gallet's oversight of the pre-trial preparations of this case may eventually be subject in certain respects to de novo review by this Court, the Court will benefit from his [*3] intimate familiarity with the related proceedings. *In re Kenai, 136 Bankr. at 61*. See also *In re Adelphi Institute, Inc., 112 Bankr. 534, 539 (S.D.N.Y. 1990)*.

Accordingly, the Court, in its discretion, hereby denies plaintiffs' motion to withdraw the reference, without

prejudice to the motion being renewed when the case becomes trial ready.

    SO ORDERED.

    JED S. RAKOFF, U.S.D.J.

Dated: New York, New York

    March 17, 1997