## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Jointly Administered |
| PILLOWTEX CORPOPRATION et al., | ) Case No. 03-12339 (PJW) |
| | ) |
| Debtors, | ) Chapter 11 |
| | ) |
| PILLOWTEX CORPORATION, | ) |
| FIELDCREST CANNON, INC., and | ) |
| THE LESHNER CORPORATION, | ) Adv. Proc. No. 06-50806 (PJW) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| FEDERATED DEPARTMENT STORES, | ) |
| INC.; FEDERATED CORPORATE | ) |
| SERVICES, INC.; BLOOMINGDALE'S, | ) |
| INC.; BLOOMINGDALE'S BY MAIL, LTD.; | ) |
| AND MACY'S DEPARTMENT STORES, | ) |
| INC. | ) |
| | ) |
| Defendants. | ) |

### DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION
### TO DEFENDANTS' MOTION FOR WITHDRAWAL OF REFERENCE
### TO THE BANKRUPTCY COURT

EDWARDS ANGELL PALMER & DODGE LLP
William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
919 N. Market Street, Suite 1500
Wilmington, DE 19801

Counsel for Defendants Federated Department
Stores, Inc.; Federated Corporate Services, Inc.;
Bloomingdale's, Inc.; Bloomingdale's By Mail, Ltd.;
and Macy's Department Stores, Inc.

Dated: November 1, 2006

# TABLE OF CONTENTS

TABLE OF CONTENTS........................................................................... i

TABLE OF AUTHORITIES .................................................................. ii

I.     INTRODUCTION ........................................................................1

II.    LEGAL ARGUMENT.................................................................1

       A.     The Facts Relating to Plaintiffs' Claims Against Federated Are Separate, Distinct and Independent from the Facts Relating to Any Other Adversary Proceeding in Plaintiffs' Bankruptcy............1

       B.     Judicial Economy is Not Served By Keeping the Instant Case With the Bankruptcy Court.............................................................3

       C.     The Case Law From Courts in the Third Circuit Does Not Support Plaintiffs' Arguments Against Withdrawal ......................................4

III.    CONCLUSION..........................................................................6

# TABLE OF AUTHORITIES

## Cases:

Auto Specialties Manufacturing Co. v. Sachs,
  134 B.R. 227 (W.D. Mich. 1990) .................................................................................... 6

Business Communications, Inc. v. Freeman,
  129 B.R. 165 (N.D. Ill. 1991) ........................................................................................ 6

Colbert v. Anderson,
  117 B.R. 51 (D. Conn. 1990)......................................................................................... 6

GE Capital Corp. v. Teo,
  2001 U.S. Dist. LEXIS 22266 (D.N.J. December 14, 2001) ....................................... 5

Gucci v. Gucci,
  1997 U.S. Dist. LEXIS 3001 (S.D.N.Y. March 17, 1997) .......................................... 6

In re G-I Holdings,
  295 B.R. 211 (D.N.J. 2003) ........................................................................................... 6

In re Pruitt,
  910 F.2d 1160 (3rd Cir. 1990) .................................................................................. 1, 6

In re: Adelphi Institute, Inc.,
  112 B.R. 534 (S.D.N.Y. 1990)...................................................................................... 6

In re: Keene Corp.,
  182 B.R. 379 (S.D.N.Y. 1995)...................................................................................... 6

Pillowtex v. Boscov's,
  Adv. Proc. No. 06-50805 ............................................................................................. 4

Wakefern Food Corp. v. C & S Wholesale Grocers, Inc.,
  2002 U.S. Dist. Lexis 12609 (D. Del. July 11, 2002)................................................. 5


## Statutes:

11 U.S.C. §502.................................................................................................................5

# I. INTRODUCTION

In Plaintiffs' Response to Defendants' Motion for Determination that Claims are Non-Core and Plaintiffs' Opposition to Defendants' Motion for Withdrawal of Reference to the Bankruptcy Court ("Response"), Plaintiffs have not disputed that this matter is a non-core proceeding; that Federated requested a jury trial; that the District Court has de novo review over the Bankruptcy Court; and that this case must be tried in the District Court. Nor do Plaintiffs dispute that this case is a brand new case, filed approximately 90 days ago, in which the Bankruptcy Court has had absolutely no substantive involvement.

Rather, Plaintiffs argue that since the Bankruptcy Court has handled other pre-petition breach of contract adversary proceedings, it should also handle the breach of contract claim Pillowtex filed against Federated. Yet such an argument is not supported by common sense or Third Circuit case law. See, In re Pruitt, 910 F.2d 1160 (3rd Cir. 1990). If Plaintiffs' arguments prevailed, no adversary proceeding that was filed subsequent to another adversary proceeding could ever be withdrawn from the Bankruptcy Court.

# II. LEGAL ARGUMENT

## A. The Facts Relating to Plaintiffs' Claims Against Federated are Separate, Distinct and Independent from the Facts Relating to Any Other Adversary Proceeding in Plaintiffs' Bankruptcy.

According to their Response, Plaintiffs filed other adversary proceedings against entities such as, Kohl's, Garnet Hill, May Company, Linen's 'n Things, Mervyn's, Harbor Linen, Bed, Bath & Beyond, and Boscov's (collectively referred to as "other entities"). (Response, p. 8) During all relevant times, Federated was never owned by or related to any of the other entities Plaintiffs have sued. (See attached Declaration of Suzanne Woodard, ¶ 4.) Federated is a corporation that owns and operates department stores named "Macy's" and "Bloomingdale's."

It did not operate or own any corporations, subsidiaries, divisions, or affiliates related to any of the other entities. Nor does Federated share employees, officers, or directors with any of the other entities.

This is a breach of contract action. The terms and conditions of Federated's contracts for its alleged purchase of goods from Plaintiffs are essential to this case. The terms and conditions are unique and individual to Federated. (See "Terms and Conditions" attached as Exhibit A to Declaration of Suzanne Woodard.) None of the other entities Plaintiffs sued have ever used Federated's contracts. None of the other entities ever negotiated contracts for Federated. None of the other entities paid Federated's contracts. Federated's contracts have never been identified, discussed, examined or admitted in evidence by the Bankruptcy Court.    The terms and conditions of Federated's contracts are completely unknown to the Bankruptcy Court.

Not only is Federated a completely separate corporation with completely separate contracts unrelated to any of the other entities, but every single fact surrounding the alleged offer, acceptance and alleged breach of Federated's contracts are unique to this case. Plaintiffs cannot seriously contend that the facts surrounding this case are at all similar, must less identical, to the facts of the other cases Plaintiffs have brought against other entities. The date of the contracts; the number of contracts; the terms of the contracts; the persons involved in negotiating the contracts; the persons involved in paying the contracts; the delivery of the goods; the sale of the goods; the amount of goods, the type of goods; the price of the goods, the amount(s) of the contracts; the amount paid on the contracts; dispute(s) surrounding payment of the contracts; the dates of the conversations regarding the disputes; the details of the conversations regarding the disputes; the attempts to resolve disputes; every meeting and conversation regarding the

contracts; every meeting and conversation regarding the alleged breach; and the reasons for any dispute; simply cannot be "identical."

As a result, Plaintiffs' argument that "the legal issues and types of evidence to be offered in this action duplicate the legal issues and types of proof in all of the collection cases brought by Debtors against former retail customers" is simply an inaccurate and misleading assertion. (Response, p. 8)

### B. Judicial Economy is Not Served by Keeping the Instant Case with the Bankruptcy Court.

If Plaintiffs truly believed in judicial efficiency and if all of the adversary proceedings were truly "identical," Plaintiffs would have brought all nine (9) adversary proceedings together in a consolidated case. At the very least, they would have been brought at the same time and discovery would have been consolidated. In actuality, Plaintiffs sporadically filed each adversary proceeding randomly throughout the past three (3) years, in 2003, 2004, 2005 and 2006. None have been consolidated for the purposes of discovery or for the purposes of resolution.

Despite the fact that none of the cases involve the same parties or the same facts, Plaintiffs argue that the Bankruptcy Court should rely on evidence presented in these other cases, in which Federated was not a party. Federated has already been prejudiced by Plaintiffs' inexplicable and unwarranted three (3) year delay in filing this case. It should not suffer further prejudice by being forced to present a defense that will be tainted by previous opinions, arguments, rulings, and inferences. Plaintiffs' statement that:

> "it is a *near certainty* that the underlying facts giving rise to these alleged "damages" are *indistinguishable* ...in each of the nine collection cases" (emphasis added)(Response, p. 9),

3

virtually ensures that Federated will have no fair chance of presenting its own evidence and defenses, unmarred by prior proceedings in which it was not a party and had no notice or interest. Under circumstances like these, if the case remained in the Bankruptcy Court, Federated would certainly be forced to seek a *de novo* review from the District Court, guaranteeing that judicial economy would not be served.

Plaintiffs' argument that judicial economy is served because the Bankruptcy Court has instituted an "approach" which referred the other adversary proceedings to mediation is similarly flawed. (Response, p. 8) Mediation is hardly a unique approach and is certainly not limited to the Bankruptcy Court. The District Court is just as likely to utilize the "approach" of mediation.

Moreover, the alleged success of the Bankruptcy Court's "approach" is simply not supported by the facts. According to Plaintiffs, only fifty percent (50%) of the eight cases have settled using this "approach." More significantly, of the cases that have been resolved while pending in the Bankruptcy Court, one fifth (20%) went to trial, a very high percentage.

## C. The Case Law from Courts in the Third Circuit Does Not Support Plaintiffs' Arguments Against Withdrawal.

Whether or not other adversary proceedings filed by Pillowtex have remained with the Bankruptcy Court is not determinative in this case since the Bankruptcy Court's Docket indicates that the *only* entity to seek a withdrawal was Boscov's in <u>Pillowtex v. Boscov's</u>, Adv. Proc. No. 06-50805. It is significant that even though Boscov's was the only entity to seek withdrawal, the withdrawal was granted. Boscov's case was withdrawn from the Bankruptcy Court under circumstances almost identical to the circumstances in this case. Plaintiffs filed the adversary proceeding against Boscov's on the same day that Plaintiffs filed their case against Federated. Boscov's has not filed a counterclaim, the case was not a core proceeding, and Boscov's requested a jury trial.

4

Of the few cases Plaintiffs cited from courts in the Third Circuit, none support Plaintiffs' arguments. In <u>Wakefern Food Corp. v. C & S Wholesale Grocers, Inc.</u>, 2002 U.S. Dist. Lexis 12609 (D. Del. July 11, 2002) the court held that since the defendant had ***not*** requested a jury trial and the bankruptcy court had ***already*** made rulings pertaining to the agreement at issue, withdrawal was not appropriate at that time. In contrast, Federated has requested a jury trial and no rulings have been made.

In <u>GE Capital Corp. v. Teo</u>, 2001 U.S. Dist. LEXIS 22266 (D.N.J. December 14, 2001), the largest creditor in the bankruptcy filed a breach of fiduciary duty claim involving twelve preferential and/or fraudulent transfers already at issue in the bankruptcy. The court stated that: "there is ***substantial factual overlap*** between this dispute and the twelve vendor preference suits currently pending in the Bankruptcy Court..." and therefore, "resources would be conserved by ***engaging in coordinated discovery***." (emphasis added.) <u>Id</u>. at *16. In contrast, Federated's contracts at issue in the present case have never been the subject of any prior proceeding in the Bankruptcy Court.

Finally, in <u>In re G-I Holdings</u>, 295 BR 211 (D.N.J. 2003), the court ***withdrew the adversary proceeding to the District Court.*** Citing "sound judicial administration, efficiency, and fairness," it held that the "ultimate issue" in the adversary proceeding, i.e., successor liability, should be resolved by the District Court. <u>Id</u>. at 217. The *only* portions of the case retained by the bankruptcy court were two non-adversary estimation proceedings under 11 U.S.C. § 502.

Instead of relying on analogous case law from courts in the Third Circuit, Plaintiffs cited non-precedential opinions from district courts in different judicial circuits -- circuits that do not rely upon the Third Circuit <u>Pruitt</u> factors – to support its arguments. See, <u>In re Pruitt</u>, 910 F.2d

1160 (3rd Cir. 1990). Most of Plaintiffs' case law relies on a decision from the Southern District of New York, In re: Adelphi Institute, Inc., 112 B.R. 534 (S.D.N.Y. 1990).[1] Adelphi does not reference, apply or adopt the Third Circuit Pruitt factors for determining judicial economy, and therefore, it and its progeny are totally irrelevant in this case.

## III.  CONCLUSION

In conclusion, Federated has supported every element of cause relied upon by courts in the Third Circuit. This adversary proceeding is: 1) a non-core proceeding and 2) Federated seeks a jury trial. Leaving this case in the Bankruptcy Court would:  1) not affect the uniformity of bankruptcy administration; 2) not reduce forum shopping and confusion; 3) foster economical use of debtor/creditor resources; 4) expedite the bankruptcy process; and 5) the request for withdrawal is timely. Finally, judicial economy is served by withdrawal since the District Court must eventually try the case, must review any Bankruptcy Court findings, and the Bankruptcy Court has had no substantive involvement in the case to date.   Plaintiff has not demonstrated otherwise.

---

[1] See, Auto Specialties Manufacturing Co. v. Sachs, 134 B.R. 227 (W.D. Mich. 1990);  In re: Keene Corp., 182 B.R. 379 (S.D.N.Y. 1995);  Business Communications, Inc. v. Freeman, 129 B.R. 165 (N.D. Ill. 1991); Colbert v. Anderson, 117 B.R. 51 (D. Conn. 1990); Gucci v. Gucci, 1997 U.S. Dist. LEXIS 3001 (S.D.N.Y. March 17, 1997), cited in Plaintiff's Response.

Dated: November 1, 2006
Wilmington, Delaware

EDWARDS ANGELL PALMER & DODGE LLP


_William E. Chipman, Jr. (No. 3818)_
William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
919 N. Market Street, Suite 1500
Wilmington, DE 19801
Telephone:  (302) 425-7124
Facsimile:   (302) 777-7263
wchipman@eapdlaw.com
molivere@eapdlaw.com

-and-

FEDERATED DEPARTMENT STORES, INC.
David Martin
Suzanne Woodard
611 Olive Street, Suite 1750
St. Louis, MO  63101
Telephone:  (314) 342-6719
               (314) 342-6050
Facsimile:   (314) 342-3066
david.martin@fds.com
suzanne.woodard@fds.com

Counsel for Defendants Federated Department
Stores, Inc.; Federated Corporate Services, Inc.;
Bloomingdale's, Inc.; Bloomingdale's By Mail, Ltd.;
and Macy's Department Stores, Inc.

# EXHIBIT A

*2001 U.S. Dist. LEXIS 22266, \**

GENERAL ELECTRIC CAPITAL CORPORATION, Plaintiff, v. ALFRED TEO, Defendant.

Civ. No. 01-CV-1686(WGB)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

2001 U.S. Dist. LEXIS 22266

December 14, 2001, Decided

**NOTICE: [\*1]**   NOT FOR PUBLICATION

**DISPOSITION:** Defendant's motion to withdraw reference to the Bankruptcy Court dismissed without prejudice. Defendant leave to reinstate his motion at the conclusion of all pre-trial proceedings granted.

**CASE SUMMARY:**
**PROCEDURAL POSTURE:** Defendant creditor moved to withdraw reference to the bankruptcy court of a tort action commenced against him by plaintiff, another creditor in debtor's bankruptcy.

**OVERVIEW:** The court found that based on the proof of claim defendant filed in the bankruptcy action, it appeared to the court that defendant was the single largest creditor of the debtor. If defendant's claims were subordinated there was a possibility that depending on how the matter adjudicated it could favorably effect the likelihood of recovery to the unsecured creditor class. In such a circumstance, the court had to conclude that the matter was related to the underlying bankruptcy proceeding, and that as a result the bankruptcy court had jurisdiction to hear it. Further, despite defendant's demand for a jury trial, the court concluded that the action was best left before the bankruptcy court, at least until all pre-trial matters had been resolved. Leaving the dispute before the bankruptcy court would promote uniformity in bankruptcy administration, reduce confusion, foster the economical use of the debtors' and creditors' resources, and most importantly expedite the bankruptcy process.

**OUTCOME:** Defendant's motion to withdraw reference to the bankruptcy court was dismissed without prejudice. Defendant was granted leave to reinstate his motion after the bankruptcy court had concluded all pre-trial proceedings, and after the bankruptcy court had made a determination of whether the proceeding was core or non-core.

**CORE TERMS:** non-core, jury trial, resin, withdrawal, withdraw, motion to withdraw, vendor, proof of claim, adversary proceeding, counterclaim, discovery, abstention, pre-trial, bankruptcy proceedings, bankruptcy proceeding, de novo, adjudicate, preside, hear, Seventh Amendment, currently pending, bankruptcy case, collateral, withdrawn, plastic, subject matter jurisdiction, unsecured creditor, civil proceeding, timely motion, cause shown

**LexisNexis(R) Headnotes**

Bankruptcy Law > Practice & Proceedings > Jurisdiction > Core Proceedings
Bankruptcy Law > Practice & Proceedings > Jurisdiction > Federal District Courts
Bankruptcy Law > Practice & Proceedings > Jurisdiction > Noncore Proceedings
*HN1* When confronted with a bankruptcy dispute, a district court shall, pursuant to 28
    U.S.C.S. § 157(a), refer any or all cases under title 11 and any or all proceedings

Get a Document - by Citation - 2001 U.S Dist. LEXIS 22266

Case 1:06-cv-00093-GMS    Document 8-2    Filed 11/14/2006    Page 3 of 11    Page 2 of 11

arising under title 11 or arising in or related to a case under title 11 to the bankruptcy judges for the district. In keeping with 28 U.S.C.S. § 157(a), 28 U.S.C.S. § 157(b)(1) provides that the merits of certain "core" bankruptcy matters may be heard and ruled on by the bankruptcy court. For other "non-core" matters that are related to bankruptcy proceedings but are not central to them, a bankruptcy judge may not enter judgment on the merits, but must instead enter proposed findings of fact and conclusions of law that are reviewed de novo by the district court. 28 U.S.C.S. § 157(c)(1).

Bankruptcy Law > Practice & Proceedings > Jurisdiction > Federal District Courts
*HN2* A district court may withdraw, in whole or in part, any case or proceeding referred under 28 U.S.C.S. § 157 on its own motion or on timely motion of any party, for cause shown. 28 U.S.C.S. § 157(d).

Bankruptcy Law > Practice & Proceedings > Jurisdiction > Federal District Courts
Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview
*HN3* For subject matter jurisdiction to exist before a bankruptcy court, there must exist some nexus between a "related" civil proceeding and the title 11 bankruptcy case. The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.

Bankruptcy Law > Practice & Proceedings > Adversary Proceedings > General Overview
*HN4* In guiding those district courts that have been asked to rule on motions to withdraw reference, the United States Court of Appeals for the Third Circuit has opined that the district court should consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process.

Bankruptcy Law > Practice & Proceedings > Adversary Proceedings > General Overview
Bankruptcy Law > Practice & Proceedings > Jurisdiction > Core Proceedings
Bankruptcy Law > Practice & Proceedings > Jurisdiction > Noncore Proceedings
*HN5* Proceedings should not be withdrawn for the sole reason that they are non-core. Instead, the cause shown requirement in 28 U.S.C.S. § 157(d) creates a presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court unless rebutted by a contravening policy.

Bankruptcy Law > Practice & Proceedings > Jurisdiction > Core Proceedings
Bankruptcy Law > Practice & Proceedings > Jurisdiction > Noncore Proceedings
Bankruptcy Law > Practice & Proceedings > Jury Trials
*HN6* The United States Court of Appeals for the Third Circuit has clearly prohibited bankruptcy jury trials in non-core proceedings.

Bankruptcy Law > Practice & Proceedings > Adversary Proceedings > General Overview
Bankruptcy Law > Practice & Proceedings > Jury Trials
Civil Procedure > Trials > Jury Trials > Right to Jury Trial
*HN7* Even though decisions in this district have held that a defendant's showing that it is entitled to a jury trial which it would be unable to receive in a bankruptcy court is enough to establish cause requiring withdrawal of reference, the mere fact that a defendant has asserted a right to trial by jury is not sufficient to immediately justify withdrawal of an action from bankruptcy.

Bankruptcy Law > Practice & Proceedings > Jurisdiction > Core Proceedings
Bankruptcy Law > Practice & Proceedings > Jurisdiction > Noncore Proceedings

Civil Procedure > Trials > Jury Trials > Right to Jury Trial

HN8 If a case is non-core and a jury demand has been filed, a district court might find that the inability of the bankruptcy court to hold the trial constitutes cause to withdraw the reference. However, a district court also might decide that a case is unlikely to reach trial, that it will require protracted discovery and court oversight before trial, or that the jury demand is without merit, and therefore might conclude that the case at that time is best left in the bankruptcy court.

Bankruptcy Law > Practice & Proceedings > Adversary Proceedings > General Overview
Bankruptcy Law > Practice & Proceedings > Jury Trials
Civil Procedure > Trials > Jury Trials > Right to Jury Trial

HN9 Even when a district court must ultimately preside over a trial by jury, there is no reason why the bankruptcy court may not preside over an adversary proceeding and adjudicate discovery disputes and motions only until such time as the case is ready for trial.

**COUNSEL:** Edward T. Dartley, Esq., John K. Sherwood, Esq., LOWENSTEIN SANDLER PC, Roseland, New Jersey, for Plaintiff.

Kurt W. Hansson, Esq., Leslie A. Plaskon, Esq., Adrienne B. Alexander, Esq., PAUL, HASTINGS, JANOFSKY & WALKER LLP, Stamford, Connecticut, for Plaintiff.

Peter R. Bray, Esq., BRAY CHIOCCA ROTHSTADT & MILLER, L.L.C., Parsippany, New Jersey, for Defendant.

**JUDGES:** WILLIAM G. BASSLER, U.S.D.J.

**OPINION BY:** WILLIAM G. BASSLER

**OPINION:**

BASSLER, DISTRICT JUDGE:

Defendant Alfred Teo moves the Court to withdraw reference to the Bankruptcy Court of a tort action commenced against him by Plaintiff General Electric Capital Corporation ("GECC"). Given the common pre-trial issues that predominate this action and approximately 12 creditor preference proceedings currently pending before the Bankruptcy Court, the Court will **dismiss** Defendant's motion to withdraw reference **without prejudice** at this time. Defendant is **granted** leave to reinstate his motion after **[*2]** the Bankruptcy Court has concluded all pre-trial proceedings, and after the Bankruptcy Court has made a determination of whether the proceeding instituted by GECC against Defendant is core or non-core.

I. BACKGROUND

Zeta Consumer Products Corp. ("Zeta" or "Debtor") was in the business of manufacturing consumer and industrial plastic trash bags, cups, plates, and plastic housewares, at facilities throughout the United States. (Complaint P 3). In the ordinary course of its business, Zeta would purchase and utilize certain raw materials, commonly referred to as Resins, in its manufacturing process. (Id.)

On April 25, 2000, Zeta filed for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey. n1 Plaintiff GECC is a secured creditor in Zeta's bankruptcy action. GECC's claims against Zeta stem from revolving credit loans made to Zeta under a Loan and Security Agreement executed on May 8, 1998. (Complaint P 8). As of April, 2000, Zeta allegedly owed GECC approximately $ 16.5

million under the Loan Agreement. (Complaint P 10).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Case No. 00-34148 (NLW). That matter is currently pending before the Hon. Novalyn L. Winfield, United States Bankruptcy Judge.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*3]

The Loan from GECC to Zeta was secured in part by collateral that included "all of [Zeta's] personal property and assets, whether tangible or intangible, and whether now owned or hereafter acquired, or in which it now has or at any time in the future may acquire any right, title, or interest..." (Complaint P 12). This personal property included Zeta's Resin stockpiles, located at its facilities around the country. (Complaint PP 13, 17).

At the time Zeta became insolvent and sought bankruptcy protection, Defendant Alfred Teo was Co-Chief Executive Officer, Secretary, and a director of Zeta. (Complaint P 3). Defendant Teo is also an officer of Alpha Industries, Inc. ("Alpha"), and allegedly an officer of other companies, all of whom manufacture consumer and industrial plastic. (Complaint P 4). Allegedly, these other companies acquire Resin from the same vendors who had supplied Resin to Zeta. (Id.)

Plaintiff contends that in April, 2000 Defendant Teo, knowing of Zeta's dire financial circumstances, directed the Resin vendors to reclaim the stockpiles of Resin that they had supplied to Zeta, "for the purpose, upon information and belief, of satisfying outstanding accounts with [*4] those vendors, to the frustration of GE Capital's security interest in those Resins. Upon information and belief, Defendant Teo directed the removal and/or return of such resins in order to maintain amicable business relationships with such vendors in furtherance of Teo's personal financial interests and for the benefit of Teo's other business ventures, including, but not limited to, Alpha." (Complaint PP 17-19). Plaintiff alleges that Defendant Teo engaged in the Resin transfers despite express language in the Loan and Security Agreement that required GECC's written consent before the liquidation of any assets. (Complaint P 14). The transferred Resins were allegedly valued at approximately $ 2.6 million. (Complaint P 22).

After Debtor Zeta sought Chapter 11 protection, because of Teo's allegedly improper Resin transfers Plaintiff GECC commenced this adversary proceeding in the United States Bankruptcy Court for the District of New Jersey on February 28, 2001. n2 In its Adversary Complaint, GECC brought claims against Teo for Conversion, Breach of Fiduciary Duty, Tortious Interference with Contract, Tortious Interference with Prospective Economic Advantage, and Negligently Caused [*5] Economic Loss.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Plaintiff contends that jurisdiction is proper before the Bankruptcy Court pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(c). For reasons that will be subsequently detailed, the Court agrees.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

According to Plaintiff, Defendant Teo's Resin transfers have been actively litigated in the bankruptcy case since its commencement in April, 2000. In addition to the Resin transfers

allegedly having resulted in a reservation of rights as to recovery of collateral in a final order authorizing debtor-in-possession financing by GECC (Order attached as Ex. E to Dartley Decl.), Plaintiff contends that Teo's diversion of the Resins has prompted the Debtor to commence twelve adversary proceedings in the Bankruptcy Court against various vendors of the Resin, seeking recovery of preferences and/or fraudulent transfers. Discovery in at least eleven of these preference actions is still on-going.

In response to GECC's Adversary Complaint, on April 4, 2001 Defendant **[*6]** Teo filed an Answer and Affirmative Defenses with the Bankruptcy Court. Simultaneously, he asked the Bankruptcy Court to abstain from hearing the matter, and asked this Court to withdraw reference of the matter from the Bankruptcy Court. In his Answer, Defendant Teo expressly reserved the right to file a separate suit against Plaintiff or to file a counterclaim after his application for abstention or withdrawal of reference had been ruled on.

By letter, the parties asked this Court to delay consideration of the motion to withdraw reference until after the bankruptcy court had the opportunity to rule on Defendant's motion for abstention. At a hearing on June 4, 2001, Judge Winfield denied Defendant's request for abstention. (Transcript of June 4, 2001 Hearing attached as Ex. A to Plaintiff's Opposition to Withdrawal of Reference). After affirmatively declining to express an opinion on whether the reference of this matter ought to be withdrawn, (6/4/2001 Tr. 17:12-13), Judge Winfield found that there were no factors present that might support abstention.

After Judge Winfield's ruling, upon request this Court allowed the parties an additional period of time for briefing of the withdrawal **[*7]** of reference issue. The matter is now before the Court for decision.

## II. DISCUSSION

*HN1* When confronted with a bankruptcy dispute, a district court shall, pursuant to 28 U.S.C. § 157(a), refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . to the bankruptcy judges for the district." In keeping with § 157(a), 28 U.S.C. § 157(b)(1) provides that the merits of certain "core" bankruptcy matters may be heard and ruled on by the bankruptcy court. For other "non-core" matters that are related to bankruptcy proceedings but are not central to them, a bankruptcy judge may not enter judgment on the merits, but must instead enter proposed findings of fact and conclusions of law that are reviewed *de novo* by the District Court. 28 U.S.C. § 157(c)(1).

*HN2* A district court "may withdraw, in whole or in part, any case or proceeding referred under [§ 157] on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). Pursuant to § 157(d), Defendant has asked the Court to withdraw reference **[*8]** of Plaintiff's action, so that the matter may be tried before a jury in this Court.

In his reply papers, Defendant Teo argues for the first time that the Bankruptcy Court lacks subject matter jurisdiction over this proceeding, and that as a result the Court should withdraw reference. n3 The Court can dispose of this argument in short order. *HN3* For subject matter jurisdiction to exist before a Bankruptcy Court, there must exist some nexus between a "related" civil proceeding and the title 11 bankruptcy case. Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1994), overruled on other grounds by Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 134-35, 133 L. Ed. 2d 461, 116 S. Ct. 494 (1995). "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Id.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 It is uncontested that this Court would have diversity jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $ 75,000.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*9]

In determining whether this proceeding is related to Zeta's bankruptcy, the Court finds several statements that were made before Judge Winfield to be of assistance. When setting the stage for why this dispute impacts Zeta's bankruptcy, Plaintiff's counsel stated that, "should G.E. succeed in this action, we believe the Committee would have grounds for equitably subordinating [Teo's] claim and possibly re-ordering the priorities in the claim distribution scheme." (6/4/2001 Tr. 10:9-12). Plaintiff's counsel reached this conclusion because GECC "is basically suing Mr. Tao [sic] for diverting property of the estate which also happens to be GE's collateral. I don't know how much more related you can get to this case especially when you've got twelve pending resin actions." (6/4/2001 Tr. 16:14-18).

The Court agrees entirely with Plaintiff's reasoning. Based on the proof of claim Teo filed in the bankruptcy action, it appears to the Court that Defendant is the single largest creditor of Zeta. As Judge Winfield noted at the hearing, if Teo's claims were subordinated "there is a possibility that depending on how this matter adjudicates it could favorably effect the likelihood of recovery [*10] to the unsecured creditor class." (6/4/2001 Tr. 20:2-4). In such a circumstance, the Court must conclude that this matter is related to the underlying bankruptcy proceeding, and that as a result the Bankruptcy Court has jurisdiction to hear it. Cf. In re Trans-end Technology, Inc.,1998 Bankr. LEXIS 857, 1998 WL 404184 (Bankr.N.D.Ohio May 28, 1998)(failing to find jurisdiction over a third party adversary proceeding, but holding that it was "not a situation involving a third party action brought by a creditor against officers or shareholders of the Debtor which would impact the administration of the Debtor's Bankruptcy Estate"), citing Travelers Ins. Co. v. Goldberg, 135 B.R. 788 (D.Md. 1992)(creditor's actions against former general partners of debtor's general partner were related to the bankruptcy case where the resulting judgment would likely impact the estate's liability to remaining creditors); In re Pal Nissan, Inc., 126 B.R. 966 (Bankr.N.D.Mich. 1991)(holding that creditor's conversion claims asserted against non-debtor shareholders of corporate debtor constituted a non-core "related" proceeding).

Having concluded that the Bankruptcy Court could [*11] hear this matter, the Court must next determine whether the Bankruptcy Court should hear this matter. HN4 In guiding those district courts that have been asked to rule on motions to withdraw reference, the Third Circuit has opined that:

the district court should consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process.

In re Pruitt, 910 F.2d 1160, 1168 (3d Cir. 1990), quoting Holland America Ins. Co. v. Succession of Roy, 777 F.2d 992, 999 (5th Cir. 1985). In his initial moving papers, the only

factors that Teo advanced to support withdrawing the reference of this matter were that the action commenced by GECC is a non-core proceeding, and that his right to a trial by jury would be violated if the matter were not withdrawn from the Bankruptcy Court.

Assuming for purposes of argument that GECC's action is a non-core proceeding, the Court is mindful that $^{HN5}$"proceedings should not be withdrawn for the sole reason that they are non-core." Katzev v. Dunavant, 1997 U.S. Dist. LEXIS 18518, 1997 WL 786461, **[*12]** *5 (E.D. Pa. 1997), quoting Hatzel & Buehler, Inc. v. Central Hudson Gas & Elec. Corp., 106 B.R. 367, 371 (D.Del. 1989). Instead, "the 'cause shown' requirement in section 157(d) creates a 'presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court unless rebutted by a contravening policy.'" Id. (internal citations omitted); see also Valley Forge Plaza Assoc. v. Fireman's Fund Ins. Cos., 107 B.R. 514, 518 (E.D. Pa. 1989).

The only argument relied on by Defendant that rises to the level of a "contravening policy" is that failure to withdraw the reference of this matter would violate his Seventh Amendment right to a jury trial. The Third Circuit noted in Beard v. Braunstein that :

> The Seventh Amendment limitations on the review of jury findings are not compatible with section 157(c)(1), which requires that any contested finding by the bankruptcy court must be reviewed *de novo*. By the Seventh Amendment, any fact found by a jury cannot be reviewed *de novo*. Accordingly, a bankruptcy court cannot conduct a jury trial in a non-core proceeding.

914 F.2d 434, 443 (3d Cir. 1990). **[*13]** Given $^{HN6}$the Third Circuit's clear prohibition on bankruptcy jury trials in non-core proceedings, assuming without deciding that Defendant has a valid right to a jury trial, Defendant's right would be violated if this Court declined to withdraw the matter, and if the matter were ultimately decided by the Bankruptcy Court on its merits without a jury.

$^{HN7}$Even though decisions in this district have held that a defendant's "showing that it is entitled to a jury trial which it would be unable to receive in a bankruptcy court . . . is enough to establish 'cause' requiring withdrawal of reference," In re System Freight, Inc., 1991 U.S. Dist. LEXIS 2674, 1991 WL 33150, *4 (D.N.J. March 6, 1991), the mere fact that a Defendant has asserted a right to trial by jury is not sufficient to immediately justify withdrawal of an action from bankruptcy. The Second Circuit has suggested that:

$^{HN8}$
> If a case is non-core and a jury demand has been filed, a district court might find that the inability of the bankruptcy court to hold the trial constitutes cause to withdraw the reference. However, a district court also might decide that a case is unlikely to reach trial, that it will require protracted discovery **[*14]** and court oversight before trial, or that the jury demand is without merit, and therefore might conclude that the case at that time is best left in the bankruptcy court.

In re Orion Pictures Corp., 4 F.3d 1095, 1101-02 (2d Cir. 1993). In keeping with this

suggestion, courts in this district and elsewhere have held that $^{HN9}$ even when a district court must ultimately preside over a trial by jury, there is no reason why the Bankruptcy Court may not "preside over [an] adversary proceeding and adjudicate discovery disputes and motions only until such time as the case is ready for trial." In re Lands End Leasing, Inc., 193 B.R. 426, 436 (Bankr.D.N.J. 1996), citing In re Keene Corp, 182 B.R. 379, 385 (S.D.N.Y. 1995)(denying on ripeness grounds motion to withdraw the reference, reasoning that while an adversary proceeding carrying the right to a jury trial is in its initial stages, the bankruptcy judge "is fully equipped with the tools to proceed with [the] matter" until such time as the issues are ripe for submission to the jury), and Hayes v. Royala, Inc., 180 B.R. 476, 477 (E.D.Tex. 1995)(explaining that the inability **[*15]** of a bankruptcy judge to preside over a jury trial absent the parties' consent does not require withdrawal of the reference to the bankruptcy court until it is clear that the issues are ready for consideration by a jury).

Despite Defendant's demand for a jury trial, the Court concludes that GECC's action is best left before the Bankruptcy Court, at least until all pre-trial matters have been resolved. The Court reaches this conclusion because consideration of the Pruitt factors demonstrates that leaving the dispute before the Bankruptcy Court would promote uniformity in bankruptcy administration, reduce confusion, foster the economical use of the debtors' and creditors' resources, and most importantly expedite the bankruptcy process. Judge Winfield's own words provide evidence of this:

> I think also I would point out that I think this Court from a -- I guess I would characterize it as a judicial economy point of view has probably the most familiarity with all of the proceedings in this case in addition to the preference suits and you can characterize them as you wish, but I mean the bottom line much of the factual basis is the same both for this suit and the preference **[*16]** suits. It's just the legal theories are different. Those are all known to the Court. I've already entered some scheduling orders in those. That issue has been present in the case for at least the last -- I don't know -- four to six months area. It's an area of great familiarity to the Court. I don't think it would be burdensome on this Court's docket to hear this related matter and recollect that this Court is obviously familiar with the bankruptcy proceeding in its entirety.
>
> I also think there is a possibility that depending upon how this matter adjudicates it could favorably effect the likelihood of a recovery to the unsecured creditor class.

(6/4/2001 Tr. 19:12-20:4).

Because there is substantial factual overlap between this dispute and the twelve vendor preference suits currently pending in the Bankruptcy Court, resources would be conserved by engaging in coordinated discovery. Further, because this dispute has the potential to seriously impact the underlying bankruptcy proceedings, any orders issued in this dispute should be consistent with the orders entered by the Bankruptcy Court in the preference suits. Also, because final resolution of the merits of this suit might **[*17]** necessitate a reordering of the creditor priorities in the bankruptcy action, the Bankruptcy Court would be in a better position to shepard this dispute along, so that trial of this dispute can occur prior to final resolution of the bankruptcy proceeding. Lastly, because there exists the prospect that this dispute will be resolved prior to trial, Defendant's argument regarding his right to a trial by jury might eventually be mooted, thus defeating the sole argument asserted by Defendant in favor of withdrawal. Given all of these factors, and for other good cause shown by Plaintiff, the Court will deny Defendant's motion without prejudice, until such time as a jury trial

becomes necessary.

Because the Court has essentially elected to put off final decision on withdrawal until another day, the question of whether this is a core or non-core dispute need not be resolved at present. The determination of whether the action against Teo is a core proceeding or a non-core proceeding will ultimately have to be resolved, however, because if the matter is a core proceeding then even if Teo's right to a jury trial persists, the Bankruptcy Court would be able to conduct a jury trial on the merits. **[*18]**

Although Plaintiff essentially conceded in its complaint that this proceeding is non-core, as mandated by 28 U.S.C. § 157(b)(3) a determination should initially be made by the Bankruptcy Court. n4 See Richard M. Cieri, Neil P. Olack, Joseph M. Witalec, Protecting Technology and Intellectual Property Rights When a Debtor Infringes on Those Rights, 8 Am. Bankr. Inst. L. Rev. 349, 371 (2000) ("Although the district court must decide the motion to withdraw the reference under 28 U.S.C. § 157(d), the issue of whether the proceeding is core or non-core is determined in the first instance by the bankruptcy court. Accordingly, if a party seeks withdrawal of the reference on the basis that a proceeding is non-core, the district court may defer its determination of the withdrawal motion until the bankruptcy court first determines if the underlying action is core or non-core"); See also Travellers International v. Robinson, 982 F.2d 96, 97-98 (3d Cir. 1992); Dailey v. First Peoples Bank of Jersey, 76 B.R. 963, 968-969 (D.N.J. 1987); Hatzel & Buehler, Inc. v. Central Hudson Gas & Electric Corp., 106 B.R. 367, 368 (D. Del. 1989); **[*19]** Mellon v. Delaware & Hudson Railway Co., 122 B.R. 887, 891 (D. Del. 1991); Young v. Snider, 1994 U.S. Dist. LEXIS 2901 (E.D.Pa. 1994).

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

N4 28 U.S.C. § 157(b)(3) provides in relevant part:

   The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Neither party asked the Bankruptcy Court to determine whether the suit commenced by Plaintiff is a core proceeding, although Plaintiff did suggest in its opposition brief to Defendant's withdrawal motion that the proceeding might be a core matter. After recognizing Plaintiff's suggestion that this might be a core dispute, the Bankruptcy Judge specifically declined to reach the issue, but did hint that the matter was likely not a core proceeding. n5

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 Judge Winfield had this to say at the hearing on June 4, 2001:

   It is my view as it sits here - as I said to counsel at the outset, I thought I would have a hard time keeping a straight face finding it to be a core proceeding but I didn't want to preclude them from arguing to the contrary and I don't know that we argued that issue.

(6/4/2001 Tr. 22:5-9).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*20]**

Judge Winfield's comments aside, if Defendant intends to re-submit his motion to withdraw reference prior to a jury trial, the Court would ask the Bankruptcy Court to first make a determination of whether the action commenced by Plaintiff is a core or non-core proceeding. This ruling will greatly speed the Court's eventual analysis of whether withdrawal for a final trial on the merits is ultimately warranted.

As a final matter, the Court will touch upon the question of whether Defendant will waive his right to a jury trial by filing a counterclaim against Plaintiff in the Bankruptcy Court. Some courts have suggested that a Defendant who objects to the Bankruptcy Court's jurisdiction in an adversary proceeding waives that objection by filing a counterclaim before the Bankruptcy Court. That result seems to be of concern to Defendant Teo, because he has elected to await this Court's ruling on the withdrawal issue prior to filing a counterclaim with the Bankruptcy Court.

Defendant Teo may rest assured that the Third Circuit embraced a rule that protects his jurisdictional objections when it held that a "defendant does not waive objections to jurisdiction and venue by asserting a compulsory **[*21]** counterclaim." Beard v. Braunstein, 914 F.2d 434, 442 (3d Cir. 1990). Accordingly, even if Defendant Teo files a counterclaim with the Bankruptcy Court, he can still object to the Bankruptcy Court's jurisdiction over the merits of his claim, and seek withdrawal prior to trial so that this Court may try the matter before a jury.

That having been said, Defendant's objections to the Bankruptcy Court's jurisdiction might not be preserved forever. Plaintiff contends that because Defendant filed a proof of claim in the Zeta bankruptcy, he has submitted himself to the jurisdiction of the Bankruptcy Court and therefore has waived his right to a jury trial. Although the Court does not embrace such an expansive jurisdictional impact of the filing of a proof of claim, the Court notes that Defendant's proof of claim still may come to haunt him. If the Bankruptcy Trustee should join into Plaintiff's action against Defendant, Defendant's right to a jury trial would likely be waived. The Court reaches this conclusion because of Supreme Court precedent to the effect that when a creditor submits a proof of claim against the estate, that creditor submits itself to the jurisdiction **[*22]** of the bankruptcy court as to disputes against the estate. See In re Robert H. Kraeger Co., 1999 Bankr. LEXIS 615, 1999 WL 342762, *6 (Bankr.E.D.Pa. May 24, 1999), citing Langenkamp v. Culp, 498 U.S. 42, 112 L. Ed. 2d 343, 111 S. Ct. 330 (1990) (per curiam) and Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 106 L. Ed. 2d 26, 109 S. Ct. 2782 (1989). Although the Court is unaware of any decision expanding the Langenkamp and Granfinanciera decisions to actions commenced in Bankruptcy Court against a creditor by a third party, the Court would welcome additional briefing on the issue should Defendant eventually elect to re-file his motion for withdrawal of reference.

III. CONCLUSION

Defendant's motion to withdraw reference to the Bankruptcy Court is dismissed without prejudice. The Court grants Defendant leave to reinstate his motion at the conclusion of all pre-trial proceedings, and after the Bankruptcy Court has had an opportunity to make an initial determination as to whether GECC's action is a core or non-core proceeding.

An appropriate order follows.

WILLIAM G. BASSLER, U.S.D.J.

Dated: **[*23]** December 14, 2001

Service: **Get by LEXSEE®**
Citation: **2001 U.S. Dist. LEXIS 22266**
View: Full
Date/Time: Wednesday, November 1, 2006 - 2:56 PM EST

* Signal Legend:
⬤ - Warning: Negative treatment is indicated
🆀 - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
✦ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

 LexisNexis®
About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT B

Get a Document - by Citation - 1997 U.S. Dist. LEXIS 3001    Page 1 of 3

Case 1:06-cv-00693-GMS   Document 3-3   Filed 11/14/2006   Page 2 of 4

*1997 U.S. Dist. LEXIS 3001, \**

ALYSSA GIOIA GUCCI (a minor suing by her Next Friend Stephen Armstrong) and GABRIELE PAOLO GUCCI (a minor suing by his Next Friend Stephen Armstrong) and PENELOPE JAYNE ARMSTRONG, Plaintiffs, -v- JENNIFER PUDDEFOOT GUCCI and FRANK G. SINATRA, as Trustee of Paolo Gucci et. al, Defendants.

96 Civ. 8216 (JSR)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1997 U.S. Dist. LEXIS 3001

March 17, 1997, Decided
March 17, 1997, FILED

**DISPOSITION: [\*1]** Plaintiffs' motion to withdraw reference denied without prejudice to the motion being renewed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In an action against defendants, which included the debtors and the trustee in a bankruptcy action, plaintiffs filed a motion to withdraw the reference of the action to the bankruptcy court.

**OVERVIEW:** The court previously granted defendants' motion to refer the action to the bankruptcy court in which a related action was pending concerning the bankruptcy estate of defendant debtors. Plaintiffs sought to withdraw the reference because they did not consent to a jury trial before the bankruptcy court. In its discretion, the court denied the motion and held that the issue of withdrawal turned largely on considerations of judicial economy. The court determined that nothing had altered the court's view that the interests of judicial economy would be well served by having the case before the bankruptcy court which already had extensive knowledge of the complex underlying transactions and occurrences. The court found that the case had to return to it if and when there was a jury trial and that the court would benefit from the bankruptcy court's intimate familiarity with the related proceedings.

**OUTCOME:** The court denied plaintiffs' motion to withdraw the reference without prejudice to the motion being renewed when the case was ready for trial.

**COUNSEL:** For ALYSSA GIOLA ALYSSA GIOLA GUCCI (A MINOR SUING BY HER NEXT FRIEND STEPHEN ARMSTRONG), GABRIELE PAOLO GABRIELE PAOLO GUCCI (A MINOR SUING HIS NEXT FRIEND STEPHEN ARMSTRONG), PENELOPE JAYNE ARMSTRONG, plaintiffs: David C. Erdos, Erdos & Maddox, L.L.C., Stamford, CT.

For FRANK G. SINATRA, as Trustee of Paolo Gucci et. al., defendant: Jonathan L. Flaxer, Winick & Rich, New York, NY.

For FRANK G. SINATRA, counter-claimant: Jonathan L. Flaxer, Winick & Rich, New York, NY.

For ALYSSA GIOLA ALYSSA GIOLA GUCCI (A MINOR SUING BY HER NEXT FRIEND STEPHEN ARMSTRONG), GABRIELE PAOLO GABRIELE PAOLO GUCCI (A MINOR SUING HIS NEXT FRIEND STEPHEN ARMSTRONG), PENELOPE JAYNE ARMSTRONG, counter-defendants: David C. Erdos, Erdos & Maddox, L.L.C., Stamford, CT.

**JUDGES:** JED S. RAKOFF, U.S.D.J.

**OPINION BY:** JED S. RAKOFF

**OPINION:** MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.

On December 6, 1996, the Court granted defendants' motion to refer this action to the Bankruptcy Court, in which the Honorable Judge Jeffry H. Gallet was (and still is) presiding over a related action concerning the Bankruptcy Estate **[*2]** of Paolo Gucci. Thereafter, the plaintiffs, upon informing Judge Gallet pursuant to 28 U.S.C. § 157(e) that they would not consent to a jury trial before the Bankruptcy Court, moved this Court to withdraw the reference. See 28 U.S.C. § 157(d).

While there is no question that this case must return the District Court if and when there is a jury trial, at the present infant stage of the proceeding the issue of withdrawal is discretionary and turns largely on considerations of judicial economy. See In re Kenai Corp., 136 Bankr. 59, 61 (S.D.N.Y. 1992). As this Court explicitly held in its Memorandum Order referring the case to Judge Gallet, "the interests of judicial economy will well be served by having this case before [the Bankruptcy] Court that already has such extensive knowledge of the complex underlying transactions and occurrences." Gucci v. Gucci, No. 96 Civ. 8216 (12/6/96 Memorandum Order). Nothing in the intervening weeks has altered the Court's view of that conclusion. While Judge Gallet's oversight of the pre-trial preparations of this case may eventually be subject in certain respects to de novo review by this Court, the Court will benefit from his **[*3]** intimate familiarity with the related proceedings. In re Kenai, 136 Bankr. at 61. See also In re Adelphi Institute, Inc., 112 Bankr. 534, 539 (S.D.N.Y. 1990).

Accordingly, the Court, in its discretion, hereby denies plaintiffs' motion to withdraw the reference, without prejudice to the motion being renewed when the case becomes trial ready.

SO ORDERED.

JED S. RAKOFF, U.S.D.J.

Dated: New York, New York

March 17, 1997

Service: **Get by LEXSEE®**
Citation: **1997 U.S. Dist. LEXIS 3001**
View: **Full**
Date/Time: Wednesday, November 1, 2006 - 2:58 PM EST

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

Get a Document - by Citation - 1997 U.S. Dist. LEXIS 3901    Page 3 of 3

Case 1:06-cv-00093-GMS    Document 3-3    Filed 11/14/2006    Page 4 of 4



About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT C

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 12609    Page 1 of 10

Case 1:06-cv-00693-GMS    Document 3-4    Filed 11/14/2006    Page 2 of 11

*2002 U.S. Dist. LEXIS 12609, \**

In re: BIG V HOLDING CORP., et al., Debtors. WAKEFERN FOOD CORP., Plaintiff, v. C&S WHOLESALE GROCERS, INC., Defendant.

Chapter 11, Case No. 00-04372 (RTL), (Jointly Administered), Adversary Proceeding No. 01-758, Civil Action No. 01-233 (GMS)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2002 U.S. Dist. LEXIS 12609

July 11, 2002, Decided

**DISPOSITION:** Plaintiff's motion to withdraw reference to bankruptcy was denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff food cooperative's action against defendant competitor, for tortious interference with the cooperative's contract with the debtor, was removed to the United States Bankruptcy Court for the District of New Jersey and transferred to the United States Bankruptcy Court for the District of Delaware. The cooperative filed a motion to withdraw the reference of the action under 28 U.S.C.S. § 157 (d).The intervenor creditors' committee objected.

**OVERVIEW:** The action was intertwined with other matters before the bankruptcy court, who had stated that the action should be adjudicated together with other related actions. 11 U.S.C.S. § 1109(b) gave the committee an unconditional right to intervene in the non-core adversary which was "related to" the bankruptcy case. The complaint, seeking an injunction against the debtors' contract with the competitor, affected the estate and reorganization. Promoting uniform bankruptcy administration, reducing forum shopping, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process, were best served by denying withdrawal under 28 U.S.C.S. § 157 (d).The bankruptcy court had already made findings as to what would constitute a breach of good faith and fair dealing under the cooperative's contract. While the cooperative intended to formally demand a jury trial, it had not done so. Filing an amended complaint could constitute waiver of the Seventh Amendment right to a jury. A jury trial, if properly asserted, would not be adversely affected by having the bankruptcy court preside over pretrial matters until the case was ready for a district court trial.

**OUTCOME:** The court denied the motion to withdraw the reference, but did so without prejudice to the cooperative's ability to renew its request for withdrawal of the reference at a later time, when a jury trial had been properly demanded and the case became ready for trial.

**CORE TERMS:** jury trial, withdrawal, non-core, adversary proceeding, motion to withdraw, withdraw, judicial economy, unconditional, right to intervene, bankruptcy case, Seventh Amendment, declaratory judgment, motion to intervene, timely motion, permissive, mandatory, scheduling, cause of action, fair dealing, cause shown, common law, interrelated, administered, adversarial, uniformity, expediting, economical, intervenor, fostering, premature

**LexisNexis(R) Headnotes**

Bankruptcy Law > Practice & Proceedings > Jurisdiction > General Overview

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 12609 Page 2 of 10

Case 1:06-cv-00693-GMS  Document 3-4  Filed 11/14/2006  Page 3 of 11

*HN1* Referral of Bankruptcy Code proceedings from the United States District Court for the District of Delaware to the United States Bankruptcy Court for the District of Delaware is automatic pursuant to U.S. Dist. Ct., D. Del., Standing Order of Reference (1984).

Civil Procedure > Parties > Intervention > Right to Intervene
*HN2* Fed. R. Civ. P. 24(a)(1) provides that upon timely application anyone shall be permitted to intervene in an action when a statute of the United States confers an unconditional right to intervene.

Bankruptcy Law > Case Administration > General Overview
Bankruptcy Law > Committees > Reorganizations
*HN3* See 11 U.S.C.S. § 1109(b).

Bankruptcy Law > Practice & Proceedings > Jurisdiction > Core Proceedings
Bankruptcy Law > Practice & Proceedings > Jurisdiction > Noncore Proceedings
Civil Procedure > Parties > Intervention > Right to Intervene
*HN4* Although the circuits are split on whether 11 U.S.C.S. § 1109(b) confers an unconditional right to intervene, the United States Court of Appeals for the Third Circuit has taken a clear position on the issue. Section 1109(b) gives a creditors' committee an unconditional right to intervene in a non-core adversarial proceeding in federal district court which is "related to" a bankruptcy case.

Bankruptcy Law > Practice & Proceedings > Jurisdiction > General Overview
*HN5* A civil proceeding is "related to" bankruptcy when the outcome of that proceeding could conceivably have any effect on the estate being administered.

Bankruptcy Law > Practice & Proceedings > Jurisdiction > General Overview
Civil Procedure > Removal > Basis > Claims Related to Bankruptcy
*HN6* 28 U.S.C.S. § 1452(a) allows a party to remove a cause of action that is "related to" a bankruptcy case.

Bankruptcy Law > Practice & Proceedings > Jurisdiction > Federal District Courts
Civil Procedure > Removal > Basis > General Overview
*HN7* 28 U.S.C.S. § 157(a) mandates that proceedings "related to" a case under the Bankruptcy Code shall be referred to the bankruptcy judges for the district.

Bankruptcy Law > Practice & Proceedings > Adversary Proceedings > Commencement
Civil Procedure > Parties > Intervention > General Overview
*HN8* Fed. R. Bankr. P. 7024, the sole bankruptcy rule governing intervention in an adversary proceeding, merely adopts Fed. R. Civ. P. 24.

Bankruptcy Law > Practice & Proceedings > Jurisdiction > Federal District Courts
*HN9* The procedure governing withdrawal of the reference to the bankruptcy court is stated in 28 U.S.C.S. § 157(d).

Bankruptcy Law > Practice & Proceedings > Jurisdiction > Federal District Courts
Civil Procedure > Pleading & Practice > Motion Practice > Time Limitations
*HN10* See 28 U.S.C.S. § 157(d).

Bankruptcy Law > Practice & Proceedings > Jurisdiction > Federal District Courts
*HN11* The first sentence of 28 U.S.C.S. § 157(d) describes the conditions under which withdrawal is permissive, while the second sentence describes the conditions under which withdrawal is mandatory. When an action involves only state law tort and

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 12609 Page 3 of 10

Case 1:06-cv-00693-GMS Document 3-4 Filed 11/14/2006 Page 4 of 11

contract claims, it clearly does not meet the requirements for mandatory withdrawal. Therefore, the permissive withdrawal standard applies. Under this standard, the court may withdraw the reference of the adversary proceeding "for cause shown."

Bankruptcy Law > Practice & Proceedings > Jurisdiction > General Overview
*HN12* The movant bears the burden to show cause under 28 U.S.C.S. § 157(d).

Bankruptcy Law > Practice & Proceedings > Jurisdiction > Core Proceedings
Bankruptcy Law > Practice & Proceedings > Jurisdiction > Noncore Proceedings
Civil Procedure > Trials > Jury Trials > Right to Jury Trial
*HN13* In determining whether to withdraw the reference of an adversary proceeding "for cause shown" under 28 U.S.C.S. § 157(d), a court should consider: (1) the goals of promoting uniformity in bankruptcy administration, (2) reducing forum shopping and confusion, (3) fostering the economical use of the debtors' and creditors' resources, and (4) expediting the bankruptcy process. However, these factors were not designed to be exhaustive; they are only minimal standards. Relevant considerations might also include (5) the nature of the proceedings (that is, whether they are core or non-core), and (6) judicial economy. Another factor which should be considered is (7) whether the parties have requested a jury trial.

Bankruptcy Law > Practice & Proceedings > Jurisdiction > Core Proceedings
Bankruptcy Law > Practice & Proceedings > Jurisdiction > Noncore Proceedings
Governments > Courts > Authority to Adjudicate
*HN14* There are strictures upon the Bankruptcy Court's authority to hear and determine non-core proceedings that do not apply in the instance of core proceedings. 28 U.S.C.S. § 157(b)(1).Thus, a determination of whether an adversary action is a core or non-core proceeding is crucial to the determination of a motion to withdraw the reference under 28 U.S.C.S. § 157(d).

Bankruptcy Law > Practice & Proceedings > Jurisdiction > Core Proceedings
Bankruptcy Law > Practice & Proceedings > Jurisdiction > Federal District Courts
Bankruptcy Law > Practice & Proceedings > Jurisdiction > Noncore Proceedings
*HN15* The right to a jury trial is an important factor in determining a motion to withdraw the reference. This is so because absent the express consent of both parties and a special designation of jurisdiction by the district court, the bankruptcy court may not hold a jury trial in a non-core proceeding. 28 U.S.C.S. § 157(e).

Civil Procedure > Trials > Jury Trials > Right to Jury Trial
Constitutional Law > Bill of Rights > Fundamental Rights > Trial by Jury in Civil Actions
*HN16* See U.S. Const. amend. VII.

Civil Procedure > Trials > Jury Trials > Actions in Equity
Civil Procedure > Trials > Jury Trials > Right to Jury Trial
Constitutional Law > Bill of Rights > Fundamental Rights > Trial by Jury in Civil Actions
*HN17* "Suits at common law," as used in U.S. Const. amend. VII, refers to controversies in which legal rights are to be determined, as distinguished from cases in which only equitable rights are recognized and only equitable remedies are administered. Furthermore, the Seventh Amendment only requires a jury trial if a cause of action is legal in nature and it involves a matter of private right. Action on a contract, and a tort action for damages, are clearly legal in nature and involve a matter of private right.

Bankruptcy Law > Practice & Proceedings > Jurisdiction > General Overview
Bankruptcy Law > Practice & Proceedings > Jury Trials

Civil Procedure > Trials > Jury Trials > Right to Jury Trial

HN18 Withdrawal of a reference to a bankruptcy court based on the ground that a party is entitled to a jury trial should be deferred until the case is "trial ready." It would be premature to withdraw the reference to the bankruptcy court based upon an unfixed proposition that a jury trial may occur in the future.

**COUNSEL:** **[\*1]** For BIG V HOLDING CORP., debtor: Gregg Mattisen Galardi, Skadden, Arps, Slate, Meagher & Flom, Wilmington, DE.

For WAKEFERN FOOD CORP., plaintiff: Daniel J. DeFranceschi, Richards, Layton & Finger, Wilmington, DE.

For C & S WHOLESALE GROCERS, INC., defendant: Gregory W. Werkheiser, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Gregory Moneta Sleet

**OPINION:** MEMORANDUM AND ORDER

I. INTRODUCTION

On November 22, 2000, the Debtors, Big V Holding Corp., *et al.*, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Pursuant to 28 U.S.C. § 157(a), the bankruptcy cases were referred from the United States District Court for the District of Delaware to the United States Bankruptcy Court for the District of Delaware ("the Bankruptcy Court"). n1 Since the petition date, the Debtors have continued in possession of their properties and the management and operation of their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. On December 6, 2000, an Official Committee of Unsecured Creditors ("the Creditors' Committee") was **[\*2]** appointed by the United States Trustee pursuant to § 1102 of the Bankruptcy Code. Presently before the court is the Creditors' Committee's March 20, 2001 motion to withdraw the reference to the Bankruptcy Court. Since Wakefern has yet to assert a proper jury demand, and since considerations of judicial economy favor leaving the adversary proceeding in the Bankruptcy Court until it is ready for trial, Wakefern's motion to withdraw the reference will be denied at this time.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 HN19 Referral of Title 11 proceedings from the United States District Court for the District of Delaware to the United States Bankruptcy Court for the District of Delaware is automatic pursuant to a Standing Order of Reference dated July 23, 1984.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

II. FACTS

Wakefern Food Corporation ("Wakefern"), the plaintiff in this adversary proceeding (the "C&S Action"), is a food cooperative wholesaler that centralizes the purchasing of inventory and supplies for its members. The Debtors have been a member of the Wakefern cooperative

since 1959. **[*3]** Pursuant to the stockholder agreement and by-laws governing Wakefern members, the Debtors are obligated to purchase approximately 85% of their products from Wakefern.

On August 3, 2000, the Debtors decided that their continued participation in Wakefern was detrimental to their business and, as a result, entered into a supply agreement with C&S Wholesale Grocers, Inc. ("C&S"), a direct competitor of Wakefern. On November 28, 2001, six days after the Debtors filed for relief under chapter 11, Wakefern filed suit against C&S in New Jersey state court. The complaint alleged that C&S, by executing an agreement with the Debtors, had engaged in tortious interference with Wakefern's contractual relations and had aided and abetted the Debtors' breach of fiduciary duty. The complaint seeks preliminary and permanent injunctions as well as damages. The C&S Action was removed to the United States Bankruptcy Court for the District of New Jersey and was subsequently transferred to the United States Bankruptcy Court for the District of Delaware, the Honorable Raymond T. Lyons presiding. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Judge Lyons is a visiting United States Bankruptcy Judge from the District of New Jersey.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*4]**

On March 20, 2001, Wakefern filed a motion to withdraw the reference of the C&S Action to the Bankruptcy Court. C&S objected, arguing that Wakefern had failed to make a simultaneous motion to the Bankruptcy Court for a determination of whether the C&S Action was a "core" or "non-core" proceeding as required by Delaware Local Bankruptcy Rule 5011-1. On May 25, 2001, the Bankruptcy Court issued an order designating the C&S Action as a "non-core" proceeding. Therefore, C&S withdrew its objection to Wakefern's motion to withdraw the reference. The Debtors and the Creditors' Committee, however, have continued to oppose the motion. On January 31, 2001, the Creditors' Committee filed a motion to intervene in the C&S Action, which was granted by the bankruptcy court on February 15, 2001. The court has no record of a motion to intervene being filed by the Debtors.

Central to the C&S Action is the Debtors' termination of the Wakefern supply agreement and execution of the C&S Supply agreement. Before proceeding with the C&S supply agreement, the Debtors sought a declaratory judgment from the Bankruptcy Court in order to determine whether the Debtors would owe a large withdrawal payment to Wakefern **[*5]** if they proceeded with the C&S supply agreement. On September 14, 2001, in *Big V Supermarkets, Inc. v. Wakefern Food Corp.*, 267 B.R. 71, 111 (Bankr. D. Del. 2001), the Bankruptcy Court held that the Debtors would be obligated to make the withdrawal payment. The Bankruptcy Court also made specific findings as to what would constitute a breach of good faith and fair dealing with regards to the Debtors' attempts to abandon the Wakefern supply agreement.

Apart from the declaratory judgment action, the Bankruptcy court has presided over numerous scheduling and pretrial conferences and disputes, including Wakefern's February 9, 2001 motion to compel the Debtors' assumption/rejection of the Wakefern Agreement and C&S's March 28, 2001 motion to dismiss, or in the alternative, to stay proceedings. In sum, the C&S Action is intertwined with several proceedings and matters which are or were before the Bankruptcy Court. Furthermore, Bankruptcy Court Judge Lyons stated that he believes the C&S Action should be adjudicated together with the other actions relating to the bankruptcy case. During a March 28, 2001 scheduling conference, Judge Lyons stated, "I think this is a three **[*6]** party dispute that should be dealt with together."

One final fact is crucial to the court's analysis of Wakefern's motion. To date, Wakefern has

not made any formal demand for a jury trial. However, Wakefern has indicated that they plan to file an amended complaint with the formal jury trial demand after the court decides this motion to withdraw the reference. Wakefern refuses to file the amended complaint for fear that filing a claim in the Bankruptcy Court could constitute consent to the jurisdiction of the Bankruptcy Court and consequently, waiver of the right to a jury trial.

## III. DISCUSSION

### A. Intervention

Neither the Debtors or the Creditors' Committee are parties to the C&S Action. Therefore, in order for their objection to be heard, they must have properly intervened in the adversary proceeding.

*HN2*Federal Rule of Civil Procedure 24(a)(1) provides that upon timely application anyone shall be permitted to intervene in an action "when a statute of the United States confers an unconditional right to intervene." Both the Debtors and the Creditors Committee believe that they have an unconditional right to be heard *HN3*under 11 U.S.C. § 1109 **[*7]** (b), which states, in part, "A party in interest, including the debtor, . . . [or] a creditors' committee . . . may raise and may appear and be heard on any issue in a case under this chapter." Wakefern argues that the C&S Action, an adversary proceeding, is not a "case under this chapter" as required by the statute. *HN4*Although the circuits are split on whether section 1109(b) confers an unconditional right to intervene, n3 the Third Circuit has taken a clear position on the issue. In *Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1241 (3d Cir. 1994), the Third Circuit held that section 1109(b) gives a creditors' committee an unconditional right to intervene in a non-core adversarial proceeding in federal district court which is "related to" a bankruptcy case.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 The Fourth, Fifth, and Eleventh Circuits have held that § 1109(b) does not create an absolute right of intervention in any adversary proceedings, not even those that are brought "under" chapter 11. *See Fuel Oil Supply and Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283, 1286-1287 (5th Cir. 1985); *In re Charter Co.*, 876 F.2d 866, 871 (11th Cir. 1989); *Matter of Richman*, 104 F.3d 654, 658 (4th Cir. 1997).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*8]**

*HN5*A civil proceeding is "related to" bankruptcy when the outcome of that proceeding could conceivably have any effect on the estate being administered. *See Halper v. Halper*, 164 F.3d 830, 837 (3d Cir. 1999). The complaint in the adversary proceeding between Wakefern and C&S seeks an injunction against the Debtors' supply agreement with C&S. Thus the adversary proceeding clearly affects the Debtors' estate and their ability to reorganize. Moreover, the procedural history of the C&S Action indicates that it is "related to" the bankruptcy. The proceeding was removed from state court *HN6*pursuant to 28 U.S.C. § 1452(a), which allows a party to remove a cause of action that is "related to" a bankruptcy case. Furthermore, the C&S Action was referred to the Bankruptcy Court *HN7*pursuant to 28 U.S.C. § 157(a), which mandates that proceedings "related to" a case under title 11 shall be referred to the bankruptcy judges for the district. Therefore, the C&S Action clearly satisfies the "related to" requirement.

Since the C&S Action is "related to" the bankruptcy, the *Phar-Mor* holding dictates that the Debtors and Creditors' Committee **[*9]** have an unconditional right to intervene under

section 1109(b). n4 In the instant proceeding, the Creditors' Committee has properly filed a motion to intervene and has otherwise complied with the requirements for intervention pursuant to Rule 24(c). Therefore, since 11 U.S.C. § 1109(b) gives a creditors' committee an unconditional right to intervene in light of *Phar-Mor*, the Creditors' Committee is a proper intervenor in this matter pursuant to Rule 24(a)(1). n5

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n4 *HN8* Bankruptcy Rule 7024, the sole Bankruptcy rule governing intervention in an adversary proceeding, merely adopts Federal Rule of Civil Procedure 24.

n5 Based upon the current record, the court has been unable to determine whether the Debtors have filed a timely motion to intervene. Therefore the Debtors will not be considered a proper intervenor in this proceeding for purposes of Wakefern's motion to withdraw the reference; however, the Creditors' Committee's opposition to the motion should adequately represent the interest of the Debtors.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*10]

B. Mandatory v. Permissive Withdrawal of the Reference

The C&S Action was referred to the Bankruptcy Court pursuant to 28 U.S.C. § 157(a). *HN9* The procedure governing withdrawal of the reference to the Bankruptcy Court is stated in 28 U.S.C. § 157(d), which reads,

> *HN10* "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d).

*HN11* The first sentence of this statute describes the conditions under which withdrawal is permissive, while the second sentence describes the conditions under which withdrawal is mandatory. Since the C&S Action involves only state law tort and contract claims, it clearly does not meet the requirements for mandatory withdrawal. Therefore, the permissive withdrawal standard [*11] applies. Under this standard, the court may withdraw the reference of the adversary proceeding "for cause shown." *See* 28 U.S.C. § 157(d).

As *HN12* the movant in this case, Wakefern bears the burden to show cause. *NDEP Corp. v. Handl-It, Inc.*, 203 B.R. 905, 907 (D. Del. 1996). The statute does not define "cause," but guideposts exist to elucidate the meaning of the word. The Third Circuit has stated that *HN13* a court should consider: "the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process." *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990). However, the "factors listed in *Pruitt* were not designed to be exhaustive; they are only minimal standards." *NDEP Corp.*, 203 B.R. at 908. Relevant considerations might also include "the nature of the proceedings (*i.e.*, core or non-core) and judicial economy." *Hatzel & Buehler, Inc. v. Orange & Rockland Utils., Inc.*, 107 B.R. 34, 39

(D. Del. 1989). Another factor which should be considered is "whether the **[*12]** parties have requested a jury trial." *Hatzel & Buehler, Inc. v. Central Hudson Gas & Elec. Corp.*, 106 B.R. 367, 371 (D. Del. 1989). The court will now consider these factors.

C. Factors to Consider in Determining Whether to Withdraw the Reference

1. Core v. Non-Core and Judicial Economy

*HN14* There are strictures upon the Bankruptcy Court's authority to hear and determine non-core proceedings that do not apply in the instance of core proceedings. *See* 28 U.S.C. § 157 (b)(1). Thus, a determination of whether the C&S Action is a core or non-core proceeding is crucial to the determination of the Creditors' Committee's motion. In an Order dated May 25, 2001, the Bankruptcy Court declared that the current adversary proceeding is non-core. No party has challenged the Bankruptcy Court's ruling, therefore, the court concludes the C&S Action is a non-core proceeding.

Moving to the question of judicial economy, the court believes the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process, as **[*13]** set forth in *Pruitt*, 910 F.2d at 1168, would seem to be best served by leaving the C&S Action in the Bankruptcy Court. n6

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 The court is aware that courts in this district have held that "judicial economy favors permissive withdrawal of the reference of a non-core proceeding, since the district court would still need to review the merits of the dispute when considering the bankruptcy court's proposed findings of fact and conclusions of law." *NDEP Corp.*, 203 B.R. at 908, (paraphrasing *Hatzel & Buehler, Inc. v. Orange & Rockland Utils., Inc.*, 107 B.R. 34, 39 (D. Del. 1989)). Given the facts and circumstances of this case, the court declines to follow this precedent.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The Bankruptcy Court is intimately familiar with the numerous complex issues surrounding the C&S Action. In fact, on September 14, 2001, the Bankruptcy Court issued a declaratory judgment in a separate adversary proceeding to this bankruptcy case which is interrelated with the C&S Action. *See Big V Supermarkets, Inc.*, 267 B.R. 71. **[*14]** In that proceeding, the Bankruptcy Court held that Wakefern would be entitled to a withdrawal payment if the Debtors were to proceed with their supply agreement with C&S. *Id.* at 111. Furthermore, the Bankruptcy Court made specific findings as to what would constitute a breach of good faith and fair dealing with regard to the Debtors' attempts to abandon the Wakefern supply agreement. *Id.* Thus, it is apparent that the Bankruptcy Court is very familiar with the facts and issues which are crucial to the determination of the C&S Action. Specifically, the Bankruptcy Court has become familiar with important provisions of Wakefern's By-Laws and Stockholders' Agreement, all of which are crucial to the C&S Action. In sum, the Bankruptcy Court has already expended invaluable time and energy familiarizing itself with the facts and issues surrounding the C&S Action. Considerations of judicial economy thus weigh in favor of leaving the case with the Bankruptcy Court. *See Northwestern Institute of Psychiatry, Inc. v. Travelers Indem. Co.*, 272 B.R. 104, 109 (E.D. Pa. 2001) ("The bankruptcy court is familiar with the parties, the factual background of the case **[*15]** and the legal issues involved. Therefore, this court finds no reason to disturb the present course and it declines to withdraw the reference as judicial economy will be served by allowing the adversary action to remain in bankruptcy court").

## 2. Right to a Jury Trial

*HN15* The right to a jury trial is an important factor in determining a motion to withdraw the reference. This is so because absent the express consent of both parties and a special designation of jurisdiction by the district court, the Bankruptcy Court may not hold a jury trial in a non-core proceeding. *See* 28 U.S.C. § 157(e).

It is clear that Wakefern has a constitutional right to a jury trial in this case. The *HN16* Seventh Amendment states, "In Suits at common law where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . ." U.S. CONST. amend. VII. In *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41, 106 L. Ed. 2d 26, 109 S. Ct. 2782 (1989), the Supreme Court explained that *HN17* "suits at common law" referred to controversies in which legal rights were to be determined, as distinguished from cases in which only equitable rights were **[*16]** recognized and only equitable remedies were administered. Furthermore, the Court stated that the Seventh Amendment only requires a jury trial if a cause of action is legal in nature and it involves a matter of private right. *Id.* at 42 n.4. The C&S Action, a contract and tort action for damages, is clearly legal in nature and involves a matter of private right. *See NDEP Corp.*, 203 B.R. at 909.

However, although Wakefern has a right to a jury trial of the C&S Action, a proper jury demand has not been made. Wakefern has stated that upon the court's determination of this motion to withdraw the reference, it will file the amended complaint containing a demand for a jury trial. While Wakefern's intention to formally demand a jury trial is duly noted, the fact remains that they have not yet done so. Wakefern is reluctant to file an amended complaint with a jury demand because it believes, not without reason, that filing an amended complaint could quite possibly constitute waiver of their Seventh Amendment right to have their claims tried by jury. *See Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1250-1253 (3d Cir. 1993) (identifying **[*17]** two theories whereby courts have divested parties of their rights to a jury in the bankruptcy context. Under the "waiver theory," a party can lose its right to a jury trial by voluntarily submitting to the jurisdiction of the bankruptcy court through the filing of a petition or claim in the bankruptcy court).

Although Wakefern may be entitled to a jury trial, their potential entitlement at some future date is not sufficient grounds to withdraw the reference at this time. *HN18* Withdrawal of the reference based on the ground that a party is entitled to a jury trial should be deferred until the case is "trial ready." *See In re Northwestern Institute of Psychiatry, Inc.*, 268 B.R. 79, 84 (E.D. Pa. 2001) (citing *In re Commercial Financial Services, Inc.*, 239 B.R. 586, 596 (N.D. Okla. 1999); *see also Barlow & Peek, Inc. v. Manke Truck Lines, Inc.*, 163 B.R. 177, 179 (D. Nev. 1993) (refusing to withdraw reference until "it is clear that a jury trial will be necessary and that the case is prepared and ready for such trial to commence"). It would be premature to withdraw the reference to the bankruptcy court based upon the unfixed proposition that **[*18]** a jury trial may occur in the future. At the present time, the case is not ready for trial. Assuming that Wakefern does file the amended complaint containing a proper jury demand, a jury trial may not be necessary in order to resolve the C&S Action. During the March 28, 2001 scheduling conference in connection with the C&S Action, Bankruptcy Court Judge Lyons stated that this case "cries out for settlement." Until Wakefern properly asserts their right to a jury trial, the C&S Action should remain in the Bankruptcy Court.

The court is persuaded that Wakefern's right to a jury trial, if properly asserted in the future, will not be adversely affected by having the Bankruptcy Court preside over pretrial matters until the case is ready to be tried in the District Court. Until that time, the bankruptcy judge can serve basically the same function as a magistrate. *See In re Delaware and Hudson Ry. Co.*, 122 B.R. 887, 897 (D. Del. 1991).

## IV. CONCLUSION

In this case, judicial economy weighs heavily in favor of leaving the C&S Action in the Bankruptcy Court, since that court has already issued a declaratory judgment in an adversarial proceeding which is factually **[*19]** and legally interrelated with the C&S Action. Withdrawal of the reference at this point based on Wakefern's right to a jury trial would be premature, since Wakefern has yet to officially file a jury demand.

The court will deny Wakefern's motion to withdraw the reference, but will do so without prejudice. When the C&S Action is ready for trial, Wakefern may file a renewed motion to withdraw the reference.

For the foregoing reasons, IT IS HEREBY ORDERED that:

    1. Wakefern's request for withdrawal of the reference to bankruptcy is DENIED;

    2. This denial is without prejudice to Wakefern's ability to renew its request for withdrawal of the reference at a later time, when a jury trial has been properly demanded and the case becomes ready for trial.

Dated: July 11, 2002

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

Service: **Get by LEXSEE®**
Citation: **2002 U.S. Dist. Lexis 12609**
View: Full
Date/Time: Wednesday, November 1, 2006 - 2:59 PM EST

\* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available
\* Click on any *Shepard's* signal to *Shepardize®* that case.



About LexisNexis  |  Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.